UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X



UNITED STATES OF AMERICA,      :

      Respondent.        :

 - against -                   :

                              :  Case No. 03-CR-1382

STEPHEN LOCURTO,               :  (Garaufis J.)

      Petitioner,        :

------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Petitioner, Stephen LoCurto, hereinafter referred to as either "petitioner" or "Mr. LoCurto" proceeding pro se and in forma pauperis, submits this memorandum of law in support of his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

This brief supports petitioner's contentions that (I) trial counsel rendered ineffective assistance by giving Mr. Locurto substandard advice, (1) as to correct interpretation of the law, and (2) about his statutory sentencing exposure; and (II) appellate counsel was ineffective because he omitted a significant and obvious issue on appeal that had a reasonable probability of prevailing; and (III) Trial counsel was made ineffective because the prosecution was not forthright and truthful in its Brady obligations. In the same vein, prosecutor's non disclosure of Brady material violated petitioner's due process rights.

Accordingly, petitioner's conviction and sentence must be vacated. Disputed material facts, if any, and material facts outside the record, can be properly resolved only through a hearing.

## I.     BASIS FOR JURISDICTION

The District Court has jurisdiction under 28 U.S.C. § 2255.

## II..    STATEMENT OF THE CASE

### A. History of the Case

Petitioner, was convicted at a jury trial in 2006, of a violation of 18 U.S.C. § 1962(d), a racketeering conspiracy.  He was also convicted of the three alleged underlying racketeering acts, a murder committed in 1986, a drug felony in 2000, and a drug felony in 2002.  He was sentenced to life imprisonment.

The conviction was upheld by the Second Circuit Court of Appeals on January 12, 2009.  See **United States v. Amato**, No. 06-5117-cr (L), 07-0712-cr (Con), (2nd. Cir. January 12, 2009). In that opinion, the Second Circuit agreed with the district court that the evidence against Mr. LoCurto was overwhelming.  Id., slip op. at 3-4.  Petitioner's motion for a rehearing en banc was similarly denied on April 27, 2009.  His petition for a writ of certiorari to the United States Court of Appeals for the Second Circuit was denied on October 5, 2009.  The instant § 2255 motion follows.

### B. Facts of the Case

Prior to trial, petitioner was, by the government, offered a plea for twenty (20) years.  Petitioner's sentencing exposure would be a determinate factor when choosing to either risk going to trial or instead, accepting the government's 20 year plea offer. Consequently, the question of import researched by trial attorneys Oppenheim and Batchelder, was whether a 1988 amendment to 18 U.S.C. § 1963(a), which increased the penalty for violating the statute

2

from 20 years, to life, could be applied to a homicide that occurred in 1986, two years prior to the amendment. **See** Exhibit A Declaration of Laura A. Oppenheim.

It was counsel's opinion at the time that application of the increased penalty for a homicide committed two years prior to the amendment would violate the ex post facto clause of the Constitution. Id. At a meeting with petitioner, at the Metropolitan Detention Center ("MDC") in Brooklyn, Mr. Batchelder and Ms. Oppenheim advised petitioner: (a) that in [her] opinion, applying the 1988 amendment to 18 U.S.C. § 1963(a) to a homicide which occurred in 1986, raised an ex post facto issue because of the increased penalty provided by the amendment; (b) that, whether the offense was capped at 20 years because of the ex post facto Clause, was an open question in the Second Circuit; and (c) that [Ms. Oppenheim] believed it likely [petitioner] would prevail on that issue in the Court of Appeals should he be convicted at trial. **Id.** Under the advice set forth above, petitioner made a rational decision to reject the government's 20 year plea offer, and risk going to trial because it was likely his total sentencing exposure was 20 years, and, not life.

Following an eight week trial, petitioner was convicted. Turns out, the explicit ex post facto advice, given to petitioner, by counsel, was wrong and that the 1988 amendment to 18 U.S.C. § 1963(a) did indeed apply to petitioner, ergo, his total sentencing exposure was not 20 years, but instead, he was sentenced to life imprisonment based on Racketeering Act One – the 1986 murder of Joseph Platia.[1]

---

[1]   As to the murder of Joseph Platia, petitioner had been tried and acquitted of this charge in New York State Supreme Court in 1987.

III.     ARGUMENT

(1)  TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE
BY GIVING MR. LOCURTO GROSSLY DEFICIENT ADVICE
ON THE LAW IN RESPONSE TO HIS QUERIES ON HIS
SENTENCING EXPOSURE AND WHETHER TO
ACCEPT THE GOVERNMENT'S PLEA OFFER

A.  The Deficient Advice

Laura Oppenheim, Esq. a member of the bar of this Court,

avers in her June 2, 2010 declaration (Exhibit "A") that, sometime

after Mr. Batchelder was assigned to represent Mr. LoCurto, he

(Batchelder) contacted her and asked her to assist him in defending

Mr. LoCurto, "with an emphasis on helping researching motions and

any technical legal issues that might arise during the case."

(Oppenheim Declaration, Exhibit A, ¶ 3).  In her declaration she

describes herself as "Previously of-counsel" to Mr. Batchelder.

(Oppenheim Declaration, Exhibit A, ¶ 1).  She indicates that Mr.

Batchelder wanted research on "the question of whether an 1988

amendment to 18 U.S.C. § 1963(a), which increased the penalty for

violating the statute from 20 years to life, could be applied to a

homicide that occurred in 1986, two years prior to the amendment."

(Oppenheim Declaration, Exhibit A, ¶ 4.) Mr. LoCurto, in Ground One

of the instant motion and in his declaration, avers that prior to

trial the government offered him a plea bargain wherein he would

receive a  20 year sentence in return for his plea of guilty to the

allegations in the indictment.  (Ground One of the § 2255 Motion

and LoCurto Declaration, Exhibit B, ¶ 2).  Mr. LoCurto also knew

that, should he be convicted after a trial, the sentencing guidelines

recommended life imprisonment, rather than 20 years, on the basis

of the 1988 amendment.  He further avers that he had a meeting

with Mr. Batchelder and Ms. Oppenheim at the Metropolitan Detention

4

Center ("MDC") in Brooklyn, where the plea offer and his potential
sentencing exposure were discussed. Ms. Oppenheim avers that, at
this meeting she told Mr. LoCurto, in the presence of Mr. Batchelder
his trial counsel: (a) that the application of the 1988 amendment
to a 1986 homicide raised an **ex post facto** issue; (b) that whether
the offense was capped at 20 years was an "open question" in the
Second Circuit; (c) that she believed it was likely he would prevail
on the **ex post facto** issue in the Court of Appeals, should he be
convicted at trial. (Oppenheim Declaration, Exhibit **A**, ¶ 6).

    This advice was plainly wrong. The issue was not an "open
question" in the Second Circuit. In fact, the law was quite settled
and it clearly did not support an **ex post facto** challenge, given
the facts that one would expect the government to prove. In 1992,
in **United States v. Minicone,**960 F.2d 1099, 1111 (2nd Cir. 1992),
the  Second Circuit Court of Appeals squarely held that an **ex post
facto** challenge in such circumstances would not lie where the
defendants continued to act after the effective date of the law
being challenged, even though the particular crime was committed
prior to the passage of the sentencing law. **Minicone,** 960 F.2d at
1111. Indeed, the **ex post facto** holding in **Minicone** was subsequently
applied by Judge Kearse in 2002 in **United States v. Firment,** 296
F.3d 118, 121 (2nd Cir. 2002). The opinion in **Firment** leaves no
doubt that the question was clearly determined by Minicone in favor
of the government and against defendants asserting **ex post facto**
challenges in cases that "straddled" Guidelines changes. This
indeed was a case that "straddled" the change in the law. **See
United States v. Story,** 891 F.2d 988, 994 (2nd Cir. 1989); **see
also United States v. Monaco,** 194 F.3d 381, 386 (2nd Cir. 1999).

Minimal legal research by Mr. LoCurto's counsel would have
turned up these opinions. **Minicone** is a widely cited precedent
on a number of points involving interpretation of the R.I.C.O.
statute and not an obscure pronouncement of the Court of Appeals.
See, e.g., **United States v. Daidone,** 471 F.3d 371, 375 (2nd Cir.
2006); **United States v. Bravo,** 383 F.3d 65, 84 (2nd Cir. 2004);
**United States v. Diaz,** 171 F.3d 52, 98 (2nd Cir. 1999).  Ms.
Oppenheims's opinion that the ex post facto issue was an "open
question" in the Second Circuit was wrong.  The principle relied
upon in **Mincone** had been the law in the Second Circuit since at
least 1964 and perhaps as far back as 1952.  Minicone relies on
**United States v. McCall,** 915 F.2d 811, 816 (2nd Cir. 1990) and
**Story,** 891 F.2d 988, 991-2 (2nd Cir. 1989), as well as **United
States v. Bafia,** 949 F.2d 1465, 1477 (7th Cir. 1991).  The Second
Circuit's opinion in **Story** is particularly instructive.  There,
Judge Newman, after discussion of the legislative history of the
1987 amendments to the Sentencing Reform Act of 1984, construes the
act to be applicable to "straddle" crimes, consistent with Second
Circuit precedent as expressed in **United States v. Borelli,** 336
F.2d 376, 386 n. 5 (2nd Cir. 1964) cert. denied, 379 U.S. 960 (1965),
which in turn relies on **United States v. Markman,** 193 F.2d 574 (2nd
Cir.) cert. denied sub. nom. **Livolsi v. U.S.,** 343 U.S. 979 (1952).
There was just no reasonable basis for a lawyer to conclude that
an ex post facto challenge to the  sentencing under the new
guideline was an "open question" in the Second Circuit.  Further,
given the government's expected proofs, there was little likelihood
that Mr. LoCurto could prevail on this issue on appeal.

6

## B. Counsel's Constitutional Duty to Mr. LoCurto

Mr. LoCurto was constitutionally entitled to competent professional advice, based on an accurate recitation of the law, in considering whether to accept a plea offer.  "[K]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer, will often be crucial to the decision whether to plead guilty." **United States v. Day**, 969 F.2d 39, 43 (3rd Cir. 1992); **United States v. Gordon**, 156 F.3d 376, 380 (2nd Cir. 1998) relying on **Day**, 969 F.2d at 43).  The Second Circuit further requires that the lawyer "advise his client fully on whether a particular plea to a charge appears desireable." **Boria v. Keane**, 99 F.3d 492, 496 (2nd Cir. 1996)(quotation marks and citations ommitted).  The **Boria** court further observed that the decision to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case, **Id.** at 496-497 (quoting Anthony Amsterdam's Criminal Trial Manual).  The Court then clearly enunciated counsel's constitutional duty when advising an accused on whether to accept a plea offer:"'...prior to trial an accused is entitled to rely upon  his counsel to make an independent examination of the facts, circumstances, pleadings, and laws involved and then to offer his informed opinion as to what plea should be entered.'" **Id.** at 497, citing and quoting **Von Moltke v. Gillies**, 332 U.S. 708, 721 (1948) and Judge Motley's reliance on this language in **United States  v. Villar**, 416 F.Supp. 887, 889 (S.D.N.Y. 1976).  Counsel in this case did not discharge the constitutional duty required by the Sixth Amendment of the United States Constitution and the legal precedents in this circuit.  A recent opinion of Judge Scheindlin is also instructive.  The

7

petitioner in **Carrion v. Smith,** 644 F.Supp. 2d 452 (S.D.N.Y. 2009)
alleged that he did not receive effective assistance of counsel
because his lawyer misadvised him on his sentencing exposure should
he elect to proceed to trial.  The lawyer's advise was grossly
deficient and Judge Scheindlin held that he breached his basic duty
to give competent professional advice, relying on **Boria v. Keane,**
99 F.3d 492 (2nd Cir. 1996).  Judge Scheindlin's grant of the habeas
petition and order for resentencing was affirmed in the Second
Circuit, although the opinion was issued as a summary  order and
thus has no precedential value.  Judge Scheindlin's opinion remains,
however, quite persuasive.

C. **Mr. LoCurto's Entitlement to Relief under Strickland v. Washington**

   1. **The Motion satisfies the "Unreasonableness" Prong of the Strickland Test**

Mr. LoCurto's claim of ineffective assistance of counsel in
this case is governed by **Strickland v. Washington,** 466 U.S. 668
(1984).  In order to prevail under **Strickland,** Mr. LoCurto must
show that the advice he received was "unreasonable under prevailing
professional norms."  **Strickland,** at 687-691, 104 S.Ct. at 2064-66.
Prevailing professional norms certainly require that counsel
accurately advise her client on the state of the law.  Ethical
Consideration EC 7-7 of the New York Lawyer's Code of Professional
Responsibility, applicable to both Batchelder and Ms. Oppenheim at
the time, provided that a "defense lawyer in a criminal case has a
duty to advise the client **fully** on whether a particular plea to a
charge appears to be desirable and **as to the prospects of success
on appeal,** but it is for the client to decide what plea should be

8

taken." (Emphasis supplied)  Similarly, Ethical Consideration
EC 7-8 provided that "[a] lawyer should exert best efforts to ensure
that decisions of the client are made only after the client has been
informed of the relevant considerations." (Emphasis supplied)

Ms. Oppenheim's declaration, on its face, shows that Mr. LoCurto
did not receive the information required by these professional norms
and by the U.S. Constitution, as interpreted by the U.S. Supreme
Court in Strickland. Strickland requires that the defendant show
that counsel's performance fell below an objective standard of
reasonableness as measured by the prevailing professional norms.  Id.
at 688.  Mr. LoCurto had a right to make a reasonably informed
decision whether to accept the government's plea offer based on
reasonably competent advice. Hill v. Lockhart, 474 U.S. 52, 57
(1985) citing McMann v. Richardson, 397 U.S. 759, 771 (1970)(while
uncertainty is inherent in predicting court decisions, defendants
facing felony charges are entitled to the effective assistance of
competent counsel); Van Moltke v. Gillies, 332 U.S. 708, 721 (1948).
Mr. LoCurto did not receive such assistance.  Like the movants in
Day, and Gordon, and the petitioner in Boria, the advice that
LoCurto received "was so incorrect and so insufficient that it
undermined his ability to make an intelligent decision about whether
to accept the offer."

## 2. The Motion satisfies the "Prejudice" Prong of the Strickland Test

Strickland also requires that the defendant charging his
counsel with ineffective assistance show prejudice, that is, a
reasonable probability that, but for counsel's unprofessional

9

errors, the result of the proceeding would have been different" Strickland v. Washington, 466 U.S. at 694. In the context of this case, Mr. LoCurto must therefore show a "reasonable probability" that if he had been adequately counseled about the plea offer, he would have accepted it. Courts have required a showing of "objective evidence" in addition to defendant's self-serving statement that he would have accepted the plea offer. Gordon, 156 F.3d at 380-381. The Second Circuit has held that "[a] significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding." Pham v. United States 317 F.3d 178, 182 (2nd Cir. 2003), citing Gordon, 156 F.3d at 381 and Mask v. McGinnis, 233 F.3d 132, 141-142 (2nd Cir. 2000) cert. denied 534 U.S. 943 (2003).

The sentencing disparity here was stark: the difference was between a 20 year sentence and a life sentence. The U.S. Supreme Court has held that even a minimum amount of additional jail time may constitute prejudice. Glover v. United States, 531 U.S. 198, 203 (2001)(an increase in movant's sentence from 6 to 21 months as a result of counsel's error constituted prejudice required for establishing ineffective assistance under Strickland). Indeed, Justice Kennedy, writing for the Court in that case, observed that "...our jurisprudence suggests that any amount of jail time has Sixth Amendment significance." Id.

There was a significant disparity in sentencing outcomes visited upon Mr. LoCurto as a result of counsel's unprofessional error and this disparity is sufficient to establishe prejudice under Strickland.

10

(2)    APPELLATE COUNSEL WAS INEFFECTIVE BECAUSE
HE OMITTED A SIGNIFICANT AND OBVIOUS ISSUE
ON APPEAL THAT HAD A REASONABLE PROBABILITY OF PREVAILING

As stated earlier in this brief, the three cooperating
witnesses, Vitale, D'Amico and Lino all testified that they had
"heard" from Gabe Infanti, that petitioner had killed Joseph Platia.
The government's motive fueling these testimonies was to prove to
the jury beyond a reasonable doubt that petitioner had committed
the murder of Joseph Platia and was therefore guilty of Racketeering
Act One - - the murder of Joseph Platia.  Neither the government
nor trial counsel could subpoena Gabe Infanti, the alleged declarant
of the alleged statement, because one of the three cooperating
witnesses, Salvatore Vitale, admitted to having murdered him.  Trial
counsel objected to each admission of the three cooperating
witnesses' testimonies on hearsay grounds, as it was clear the
testimonies were offered and admitted for the truth of the matter,
that petitioner committed the murder of Joseph Platia.  **See Fed.R.**
**Evid. 801(a-c).**  The court, however, overruled the objections.
And the jury subsequently found that petitioner murdered Joseph
Platia.

On appeal, appellate counsel missed this straightforward claim
- - that the district court abused its discretion as a matter of
law when it did not sustain trial counsel's objections and allowed
this cumulative prejudicial hearsay to permeate the jury.

Appellate counsel's performance in omitting this non-frivolous
claim fell below an objective standard of reasonableness.

As a result therefrom, petitioner was prejudiced because had
the district court sustained trial counsel's objections, then the
absence of the repetitious hearsay statement, might have altered

11

the jury's finding that petitioner murdered Joseph Platia, and hence committed Racketeering Act One.

Where there has been a finding of ineffective assistance of counsel, the remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe upon the competing interests." **United States v. Morrison**, 449 U.S. 361, 364 (1981); **see also United States v. Carmichael**, 216 F.3d 224 (2nd Cir. 2000); **United States v. Gordon**, 156 F.3d 376 (2nd Cir. 1998). The "remedy is one that as much as possible restores the defendant to the circumstances that would have existed had there been no constitutional error. **Carmichael**, 216 F.3d at 227; cf. **Morrison**, 449 U.S. at 365("Our approach has ... been to identify and neutralize the [unconstitutional effect] by tailoring relief appropriate to the circumstances to assure the defendant the effective assistance of counsel.)

In this case, the remedy would require vacating the verdict and sentence, because no other remedy would "restore the petitioner to the circumstances that would have existed had there been no constitutional error."

(3)    **TRIAL COUNSEL WAS MADE INEFFECTIVE BECAUSE THE PROSECUTION WAS NOT FORTHRIGHT AND TRUTHFUL IN ITS BRADY OBLIGATIONS. IN THE SAME VEIN, PROSECUTOR'S NON-DISCLOSURE OF BRADY MATERIAL VIOLATED MOVANT'S DUE PROCESS RIGHTS.**

Petitioner previously discussed the testimonies of the government's three cooperating witnesses - - Salvatore Vitale, Joseph D'Amico, and Frank Lino. Frank Lino's testimony was significant, more so than Messrs. Vitale and D'Amico, in that Mr. Lino, unlike Mr. Vitale, had not killed Gabe Infanti, who allegedly told the three cooperating witnesses that petitioner killed Joseph

12

Platia, nor was Mr. Lino, unlike Mr. D'Amico, previously convicted of perjury.  With that said, the import of the government's Brady and Giglio obligations in the matter of Frank Lino, take on added significance.  At trial, Ms. Laser believed that the government withheld Brady/Giglio information from all of the trial lawyers, to wit: that Frank Lino was (1) the subject of a heroin narcotics investigation and (2) a government informant.  A review of the trial transcripts shows that Ms. Laser's contentions were never specifically resolved.  Petitioner alleges that had the government been forthright, truthful, and timely in its Brady and Giglio obligations, trial counsel could have used Mr. Lino's Heroin trafficking and government informant status to impeach the credibility of Mr. Lino's testimony, which, as the record ably supports, was not sufficiently corroborated by other credible testimony.  See **United States v. Bagley**, 473 U.S. 667, 676 (1985); **Giglio v. United States**, 405 U.S. 1501, 154-155 (1972); **United States V. Wong**, 78 F.3d 73, 79 (2nd Cir. 1996); **Grancio v. DeVecchio**, 608 F.Supp. 2d 362 (E.D.N.Y. 2009)[Gregory Scarpa, Sr. ... confidential informant ... how many times he was closed and re-opened]; **New York v. DeVecchio**, 468 F.Supp. 2d 448 (E.D.N.Y. 2007); **Orena v. United States**, 299 F.Supp. 2d 82 (E.D.N.Y. 2004).

Without the obligatory Brady and Giglio materials, the government made it impossible for trial counsel to perform and meet the objective standard of reasonableness under **Strickland.** Petitioner would be prejudiced by the government's duplicity because Mr. Lino's testimony would unquestionably have been impeached which might have altered the jury's finding that petitioner

committed the murder of Joseph Palatia.  Only through an evidentiary

hearing, can this due process violation and the true measure of

prejudice as enunciated in **Strickland** and suffered by petitioner,

be openly fleshed out.

### MR. LOCURTO IS ENTITLED TO AN EVIDENTIARY HEARING ON THE ASSERTIONS MADE IN HIS § 2255 MOTION

The § 2255 limits the discretion of the District Court to

summarily dismiss a motion made under that section.  The statute

provides:

> "[u]nless the motion and the files and records of the case
> conclusively show that the prisoner is entitled to no relief,
> the court shall cause notice thereof to be served upon the
> United States attorney, grant a prompt hearing thereon,
> determine the issues and make findings of fact and conclusions
> of law with respect thereto." 28 U.S.C. § 2255 (2008)
> (emphasis supplied).

"The court must accept the truth of the movant's factual

allegations unless they are clearly frivolous on the basis of the

existing record."  **Day**, 969 F.2d at 41-42, citing **Virgin Islands

v. Forte**, 865 F.2d 59, 62 (3rd Cir. 1969).  The language of the

statute is intended to incorporate the standards articulated in

**Townsend v. Sain**, 372 U.S. 293, 312 (1963).  Under **Townsend**, the

district court must hold a hearing if: (1) the movant alleges facts

that, if true, would entitle him to relief; and (2) there has not

been a full and fair hearing where the facts have been reliably

found.  Id., at 312-13.  The movant need not prove the facts in

his motion.  It is sufficient if he alleges "specific, nonconclusory

facts that, if true, would entitle him to relief."  **Aron v. United

States**, 291 F.3d 708, 715 n. 6 (11th Cir. 2002).

A hearing is required if the motion presents a colorable claim

for relief arising from facts outside the record.  **United States v.

Magini**, 973 F.2d 261, 264-65 (4th Cir. 1992)(petitioner entitled to

evidentiary hearing when motion presents colorable claim and facts beyond the record are in dispute); see also **Virgin Islands v. Weatherwax**, 20 F.3d 572, 573 (3rd Cir. 1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief).  Mr. LoCurto's allegations satisfy this standard and he is entitled to a hearing on those allegations. See **Nichols v. United States**, 75 F.3d 1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on the issue); **Hayden v. United States**, 814 F.2d 888 (2nd Cir. 1987)(hearing to resolve disputed issues of fact is required on a petition for habeas corpus unless the record shows petitioner is not entitled to relief).

**IV.   CONCLUSION**

For all the foregoing reasons set forth herein, petitioner, Stephen LoCurto asks this Court to grant his § 2255 motion and vacate his conviction and sentence.  And, for such other and further relief to which he may be entitled in this proceeding.

Respectfully submitted,

Stephen LoCurto
Reg. No. 58095-053, Unit 1 B
USP Allenwood
P.O. Box 3000
White Deer, PA 17887

Petitioner, pro se

Dated: _____9-14/10_____

Certified Mail   7009 1680 0000 6302 5412

16

**Exhibit A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STEPHEN LoCURTO,

                Petitioner,

        -against-                         DECLARATION

UNITED STATES OF AMERICA,

                Respondent.
-------------------------------------------------------------X
STATE OF NEW YORK  )
                      )   ss.:
COUNTY OF NEW YORK  )

      LAURA A. OPPENHEIM, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury:

      1.     I am an attorney duly admitted to practice law in the State of New York and before this Court, with law offices at 260 Madison Avenue, 17th Fl, New York, New York 10016.  I was previously of-counsel to Harry C. Batchelder, Jr., Mr. LoCurto's trial counsel.

      2.     I submit this declaration at the request of Mr. LoCurto, in support of his *pro-se* § 2255 application.

      3.     It is my recollection, that sometime after being assigned to represent Mr. LoCurto, Mr. Batchelder contacted me and requested my assistance defending Mr. LoCurto, with an emphasis on helping researching motions and any technical legal issues that might arise during the case.

      4.     One of this issues Mr. Batchelder needed researched was the question of whether an 1988 amendment to 18 U.S.C. § 1963(a), which increased the penalty for violating the statute

from 20-years to life, could be applied to a homicide that occurred in 1986, two years prior to the amendment.

5.      It was my opinion at the time that application of the increased penalty for a homicide committed two years prior to the amendment would violate the *ex post facto* clause of the Constitution.

6.      Sometime thereafter, I attended a meeting with Mr. Batchelder and Mr. LoCurto at the Metropolitan Detention Center ("MDC") in Brooklyn. At that meeting, I advised Mr. Locurto: (a) that in my opinion, applying the 1988 amendment to 18 USC § 1963(a) to a homicide which occurred in 1986 raised an *ex post facto* issue because of the increased penalty provided by the amendment; (b) that whether the offense was capped at 20 years because of the *ex post facto* Clause was an open question in the Second Circuit; and (c) that I believed it likely he would prevail on that issue in the Court of Appeals should he be convicted at trial.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. 28 U.S.C. § 1746. Executed June 2, 2010.

Laura A. Oppenheim

2

**Exhibit B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————X

UNITED STATES OF AMERICA,              :    Civil Case NO. _____

        Respondent,                          :
                                       :    Criminal Case No. 03-1382(S-1)
  -against-                            :                  (NGG)
                                       :
STEPHEN LOCURTO,                       :         AFFIDAVIT
                                       :
       Petitioner.                          :
                                       :
———————————————————X

STATE OF PENNSYLVANIA    )
                         )    SS.:
COUNTY OF UNION          )

    I, Stephen LoCurto, being duly sworn and under penalties of perjury, do hereby state as follows:

    (1) I am the Petitioner in the above entitled case and as such am familiar with the facts and circumstances of this case.

    (2) Prior to trial, the government offered me a twenty (20) year plea. See Exhibit **C**, Government's plea offer of 11/01/05.

    (3) that some time after being offered the 20 year plea by the government, who were represented by AUSA Greg D. Andres, I had a meeting with Laura A. Oppenheim, Esq., and Harry Batchelder, Esq., at the Metropolitan Detention Center (MDC) in Brooklyn. At that meeting, we all discussed the plea with Attorney Batchelder and I paying close attention to Attorney Oppenheim as she explained her research to us with emphasis on the **ex post facto** clause. She advised me that applying the 1988 amendment of 18 U.S.C. § 1963(a) to the 1986 alleged murder of Joseph Platia, raised an **ex post facto** issue because of the increased penalty from 20 years, to life as

provided in the amendment; further, whether the 1986 homicide was capped at 20 years because of the **ex post facto** problem, was an open question in the Second Circuit; and lastly, it was likely that I would prevail on that issue should I be convicted at trial; if not at the district level, then in the Circuit.

(4) In a subsequent meeting, the first of many to follow, I questioned Attorney Batchelder about Attorney Oppenheim's legal research and presentation. "She knows what she is talking about", said Attorney Batchelder.

(5) During yet another meeting with Attorney Batchelder, he told me that the government offered me 6 years of jail credit which comprised two federal racketeering acts I was convicted of: (1) conspiracy to distribute MDMA (ecstacy) in 00 Crim. 146 (RR), a sentence already served of fifteen (15) months and (2) conspiracy to distribute marijuana in 02 Crim. 307 (NGG), sentence already served of twenty-seven months. In addition, I would be entitled to be credited for six (6) months that was credited to me for erroneous time at liberty granted by the Western District of Pennsylvania, Magistrate Keith A. Pesto, in CV-01-336J and approved by Chief United States District Court Judge D. Brooks Smith (same case). Lastly, I would be entitled to be credited two (2) years in State prison for the gun found on me in connection with the Platia homicide which was used by the prosecution in New York indictment # 3356/86. In response, I asked him "if the government would put this in writing?", he said, "no, but if the government doesn't object to it, it was likely that the judge would give it to me." Still, in another meeting, I asked Attorney Batchelder "to make the government

2

government a counter offer of ten (10) years like other codefendants were offered." Attorney Batchelder afterward approached the government with my request, however, the government declined. When I questioned him about declining, he said the government won't come off the twenty years. I said, "Is this because that's all I can get?" And Harry answered, "yes". As it turned out, all ten of my codefendants took the government's plea offer and the Court supported the sentence recommended by the government in those pleas and in some instances, the Court lowered the sentences.

(6) In subsequent discussions with Attorneys Oppenheim and Batchelder, it was advised that if the government didn't offer me a better plea than the max of 20 years, that I shouldn't take the 20 years.

(7) I discussed all the advice Attorneys Oppenheim and Batchelder gave me with my family. The focus of our family discussion was that if the government is not going to offer me less than 20 years, and after being advised by counsel on the plea, I was convinced the most time I could get was 20 years, then I should go to trial. It was the most difficult decision I ever had to make.

(8) Subsequent to reading the Second Circuit's Opinion regarding the ex post facto issue, my family and I were devastated. We did not prevail on the ex post facto issue on appeal.

(9) If I had known that there was no chance of me getting less than life I would have taken the plea. Why would I take a twenty year plea when I had nothing to lose? All I could get is twenty years if I blew trial anyway. Attorney Oppenheim even went on to tell me that even if I'm acquitted of the homicide again due to the

3

relevant conduct the judge will give me twenty years anyway.   See Exhibit D, Sentencing transcript, pp. 20-21.   Attorney Oppenheim's advice was the most important fact in why I chose to go to trial.

Further your affiant sayeth not.

I Stephen LoCurto hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge information and belief.

Dated: _____9-26-10_____

J. Reitz Case Manager
Authorized by the Act of July 7,
1955, as amended to administer
oaths (18 USC 4004)

Stephen LoCurto
Reg. No. 58095-053
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA 17887

Sworn to before me this
_26th_ day of September, 2010

_____
U.S.P. Allenwood Case Manager
Authorized to Administer Oaths

4

**Exhibit C**



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GDA:TM
F#2003R02533

One Pierrepont Plaza
Brooklyn, New York 11201

Mailing Address:   147 Pierrepont Street
Brooklyn, New York 11201

November 1, 2005

**By Fax and Federal Express**
Ronald Fischetti, Esq.  *(Att'y for L. Attanasio)*
Michael Rosen, Esq. *(Att'y for P. Calabrese)*
Lisa Scolari, Esq. *(Att'y for J. DeSimone)*
Alan Futerfas, Esq. *(Att'y for R. Attanasio)*
John Wallenstein, Esq. *(Att'y for M. Cardello)*
Neil Checkman, Esq. *(Att'y for P. Cosoleto)*
Harry C. Batchelder, Jr. *(Att'y for LoCurto)*
Flora Edwards, Esq. *(Att'y for J. Palazzolo)*
Joel Winograd, Esq. *(Att'y for R. Riccardi)*
Gail Laser, Esq. *(Att'y for A. Basile)*
Ronald Rubinstein, Esq. *(Att'y for P. Romanello)*
Sarita Kedia, Esq. *(Att'y for P. Romanello)*
Ronald Russo, Esq. *(Att'y for P. Romanello)*

            Re:   United States v. Anthony Urso, et al.
                  Criminal Docket No. 03-1382 (NGG)

Dear Counsel:

          The assigned prosecutors in this matter are prepared to
recommended to their supervisors that plea agreements be extended to
the following defendants which will recommend the following
sentences (provided these recommended sentences are consistent with
proposed charges under the applicable provisions of United States
Sentencing Guidelines).  Please note that because the proposed
sentences listed below have not been approved by the Office, they do
not constitute formal "offers."  To the extent that formal offers
are extended to include the terms below (again consistent with the
applicable Guidelines ranges), at least ten defendants must pled
guilty pursuant to these terms and all ten defendants must do so
before November 21, 2005.

| No. | Defendant | Term of Incarceration |
|---|---|---|
| 1 | Louis Attanasio | 20 Years |
| 2 | Peter Calabrese | 15 Years |
| 3 | Joseph DeSimone | 15 Years |
| 4 | Robert Attanasio | 10 Years |
| 5 | Michael Cardello | 15 Years |
| 6 | Peter Cosoleto | 15 Years |
| 7 | Steven LoCurto | 20 Years |
| 8 | John Palazzolo | 15 Years |
| 9 | Richard Riccardi | 15 Years |
| 10 | Anthony Basile | 15 Years |
| 11 | Patrick Romanello | 15 Years |

      To the extent counsel seeks to meet with the assigned prosecutors with respect to this proposal, the government is available to do so on Friday, November 11, 2005 at 1:00 p.m. on the 19th Floor of the United States Attorney's Office.  Please indicate below whether you are available to meet on this date.

Very truly yours,

ROSLYNN MAUSKOPF
United States Attorney

By: _____

Greg D. Andres
Mitra Hormozi
John Buretta
Assistant U.S. Attorneys
(718) 254-6273/6518/6314

☐   _____ [Name], Counsel for the defendant
  _____ will attend the meeting scheduled
for November 11, 2005.

☐   _____ [Name], Counsel for the defendant
  _____ will not attend the meeting
scheduled for November 11, 2005.

2

**Exhibit D**

1  like to be heard as well.

2         THE COURT:  He will be heard.

3         Let me ask, is there anything that any of the

4  families of the victims' would like to say that hasn't been

5  already been set forth in the letters that I received?

6         MR. GOLDBERG:  I don't believe so.  I have consulted

7  with them.

8         THE COURT:  Before I sentence the defendant is there

9  anything further that you would like to say, Mr. Stolar?

10         MR. STOLAR:  No, Judge.

11         THE COURT:  Mr. LoCurto, what would you like to say?

12         THE DEFENDANT:  Yes, your Honor.

13         Basically, the language in 3553 is the same as the

14  SRA of 1984 when this took place.  1986 covers when 1984 is in

15  affect and that is what I ask to be sentenced under, which is

16  the law.  Since the guidelines are optional, the only law in

17  affect is the SRA of 1984.

18         Also what I would like to say I was told by counsel

19  to reject the 20 year plea offer because all you could get is

20  20 years if you go to trial.  As a matter of fact, if you are

21  acquitted again of the murder like you were in the state you

22  could get 20 years anyway because they think you did it so you

23  might as well go to trial.  That is what I was offered, 20

24  years.  All this credit was offered to me by Greg Andres.

25  That was told to me by counsel to Harry Batchelder.

1      THE COURT: Anybody else have anything to say before

2  I sentence the defendant.

3      MR. GOLDBERG: Your Honor, we rely in large part on

4  our submission. We think your Honor has gone through a full

5  recitation and consideration of the factors. We'd ask the

6  Court also consider this defendant's complete and utter lack

7  of remorse for his criminal conduct. Thank you.

8      THE COURT: All open motions by the defense are

9  denied. All open motions by the defendant are denied. I do

10  not think there are any open motions by the government. I

11  think I covered everything.

12      MR. GOLDBERG: No, your Honor.

13      THE COURT: Are you ready to be sentenced?

14      THE DEFENDANT: Yes, your Honor.

15      THE COURT: Very well. I'm going to sentence you as

16  follows: First, let me say that the Court concurs with the

17  government that the defendant has shown a complete lack of

18  remorse for his conduct.

19      He has shown a complete lacks of respect for the

20  judicial system by committing extensive perjury, concocting a

21  story that was preposterous.

22      One thing that can be said is that once he

23  constructed the fantasy he stuck by it. So at least he's

24  consistent.

25      I guess, you can say that is a plus, but it's not a

HENRY SHAPIRO      OFFICIAL COURT REPORTER