UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
STEPHEN LOCURTO,

        Petitioner,

   -against-

                                  10 Civ. 4589 (NGG)(JO)

UNITED STATES OF AMERICA,

        Respondent.

-------------------------------------------------X

## PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HIS APPLICATION PURSUANT TO TITLE 28 UNITED STATES CODE SECTION 2255.

Alan Nelson, Esq.
Attorney for the Defendant
3000 Marcus Avenue, Ste 1E5
Lake Success, New York 11042
(516) 328-6200

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
STEPHEN LOCURTO,

        Petitioner,

   -against-

                                  10 Civ. 4589 (NGG)(JO)

UNITED STATES OF AMERICA,

        Respondent.
-----------------------------------------------------X

### PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HIS APPLICATION PURSUANT TO TITLE 28 UNITED STATES CODE <u>SECTION 2255</u>.

## A. <u>Background & Procedural History</u>

Petitioner was charged in Count One of a seventeen-Count superceding indictment of Conspiracy to violate the Racketeering and Corrupt Organization Act  ("RICO Act"), in violation of violation of Title 18 U.S.C. § 1961(1), 1962, and 1963(a)  et seq.

The overarching racketeering conspiracy, which encompassed the time period from 1985-2003, charged Petitioner with three Racketeering Acts: (1) the Murder and Conspiracy to Murder Joseph Platia in 1986; (2) a Conspiracy to Distribute Marijuana between 1991-1999; and (3) a Conspiracy to distribute Ecstasy (MDMA) 1999.

Prior to trial the government, through defense counsel, offered Petitioner the opportunity to dispose of the charges contained in the Indictment by pleading guilty to a number of the Racketeering Acts charged therein in exchange for a specific sentence of twenty (20) years

imprisonment[1]. (See Exhibit "A", Letter of AUSA Greg Andres, November 1, 2005).

Petitioner requested advice from his Counsel as to the benefits of accepting such a plea offer as contrasted to the sentencing exposure he might face were he to decline the offer and be convicted following trial.  More specifically, Locurto requested advice concerning his potential sentencing exposure were he to be convicted of Racketeering Act One, the murder of Joseph Platia.[2]

In rendering this opinion of particular significance was the legal question presented by the 1988 amendment of the Criminal penalties provisions of the RICO Act contained in 18 U.S.C. § 1963(a).  The 1988 amendment increased the statutory maximum penalty for the predicate Racketeering Act of murder from 20 years to life imprisonment.  The legal issue for which Petitioner sought the advice of counsel in considering the government's plea proposal was whether the "1988 amendment to 18 U.S.C. 1963(a), which increased the penalty for violating the statute from 20 years to life, could be applied to [the Joseph Platia] homicide that occurred in 1986, two years prior to the amendment".  (See Exhibit "B" Declaration of Laura A. Oppenheim, Esq.).

Subsequent to the government's plea offer of 20 years imprisonment both Mr. Batchelder and Ms. Oppenheim met with Petitioner at the Metropolitan Detention Center.  During this

---

[1]Petitioner was represented by Harry Batchelder, Esq., pursuant to the Criminal Justice Act.  Sometime following his appointment Mr. Batchelder requested the assistance of Laura A. Oppenheim, Esq., in defending Petitioner, with an emphasis on "any technical legal issues that might arise during the case.  (See Exhibit "B" Declaration of Laura A. Oppenheim, Esq., ¶ 3).

[2] Having been acquitted in a prior trial in State Court of the murder of Joseph Platia, Petitioner was most focused upon the sentencing consequences of a federal conviction for this offense.

meeting Ms. Oppenheim advised Mr. Locurto:

> "(a) that in my opinion, applying the 1988 amendment to 18
> U.S.C. § 1963(a) to a homicide which occurred in 1986 raised
> an *ex post facto* issue because of the increased penalty provided
> by the amendment; (b) that whether the offense was capped
> at 20 years because of the *ex post facto* Clause was an
> open question in the Second Circuit; and (3) that I believed
> it likely he would prevail on that issue in the Court of Appeals
> should he be convicted at trial".

(See Exhibit "B" Declaration of Laura A. Oppenheim, Esq. ¶6).

The Declaration is therefore unambiguous in stating that counsel advised the Petitioner that it was her legal opinion that the maximum sentencing exposure he faced were he to be convicted of the murder of Joseph Platia was twenty years imprisonment.

Based upon this advice petitioner made a rational decision to reject the government's plea offer of a sentence of twenty years imprisonment, and proceed to trial.  Petitioner did so in reliance upon the advice of counsel that the maximum sentence he could receive were he to be convicted of the murder of Joseph Platia was twenty years imprisonment.  As Locurto states in his affidavit in support of the petition:

> "If I had known that there was no chance of me getting less
> than life I would have taken the plea.  Why would I take
> a twenty year plea when I had nothing to lose.  All I could
> get is twenty years if I blew trial anyway."

(See Exhibit "C" Affidavit Stephen Locurto ¶ 9).

In making his decision to reject the government's plea offer of twenty years imprisonment Petitioner relied upon the specific legal opinion provided by his counsel that the maximum sentencing exposure he faced were he to be convicted of the Platia murder was twenty (20) years and not life imprisonment.

3

Following trial Petitioner was convicted of all three Racketeering Acts contained in count One of the Indictment, including the 1986 murder of Joseph Platia.  On February 20, 2007 Petitioner was sentenced by the Hon. Nicholas G. Garaufis to life imprisonment.

The conviction was affirmed by the Second Circuit Court of Appeals, United States v. Amato, No. 06-5117-cr (L), 07–0712-cr (2nd Cir. January 12, 2009).  His motion for rehearing *en banc* was denied (April 27, 2009) and his petition for a *writ of certiorari* was denied by the United States Supreme Court on April 27, 2009.

Petitioner filed the instant writ for a writ of habeas corpus pursuant to 28 U.C. § 2255 and pro se Memorandum of Law in Support on October 4, 2010.  Subsequently the United States Supreme Court granted certiorari in Lafler v. Cooper, 2011 U.S. LEXIS 10 (U.S. Jan. 7, 2011).  The issues raised in Lafler were:

> 1. Is a state habeas petitioner entitled to relief where his counsel deficiently advises him to reject a favorable plea bargain premised upon erroneous legal advice and the defendant is later convicted and sentenced to a significantly greater period of imprisonment then that proffered in the rejected plea offer.

> 2. What remedy, if any, should be provided for ineffective assistance of counsel during plea bargain negotiations if the defendant was later convicted and sentenced pursuant to constitutionally adequate procedures to a significantly greater sentence than that contained in the rejected plea offer?

On June 3, 2011 Petitioner filed a motion seeking this court to stay the instant petition and hold it in abeyance pending the outcome of Lafler v. Cooper, supra.   By Order dated July 20, 2011 this Court granted petitioner's application.

On March 21, 2012 the Supreme Court rendered it decision in Lafler v. Cooper, 132 S. Ct. 1376 (2012) and a companion case Missouri v. Frye, 132 S. Ct. 1389, 1407 (2012).  In Frye,

supra. the Court held that the Sixth Amendment right to counsel extends to the plea bargaining process stating the reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that he Sixth Amendment requires in the process at critical stages.  In the context of pleas a defendant must show a reasonable possibility that the outcome of the plea process would have been different with competent advice.  Frey, ante at 1407.

The Court in LaFler v. Cooper, 132 S.Ct. 1376, (2012) held that where the ineffective advice led to an offer's rejection a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea would have been presented to the court (i.e. that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances) that the court would have accepted its terms, and that the conviction, or sentence, or both, under the offers terms would have been less severe than under the judgment and sentence that in fact were imposed.  The court further held that where a defendant shows ineffective assistance has caused the rejection of a plea leading to a more severe sentence at trial, the remedy must "neutralize the taint" of the constitutional violation.  Lafler, ante 1376.

Subsequent to the decisions of Frye and Lafler the Court, at petitioner's request, appointed counsel pursuant to the Criminal Justice Act to assist him in presenting his petition. The instant Memorandum of Law is submitted supplemental to petitioner's initial filings.

**B.  Jurisdiction of the Court**

The district court had jurisdiction herein pursuant to 18 U.S.C. §3221.  The Court of

Appeals had jurisdiction pursuant to 28 U.S.C. § 1291.  This Court has jurisdiction pursuant to Article I, Section 9, clause 2 of the United States Constitution and 28 U.S.C. § 2255.  See Jones v. Cunningham, 371 U.S. 236, Rumsfeld v. Padilla, 159 L.Ed 2d 513 (2004).

**C.  Standard of Review**

**i. § 2255 and Ineffective Assistance of Counsel**

"Section 2255 allows a federal prisoner to attack collaterally his sentence on the grounds that it was "imposed in violation of the Constitution." 28 U.S.C. § 2255(a).  Because the Sixth Amendment provides criminal defendants with the right to effective assistance of counsel, inadequate representation is a basis for relief under section 2255." Morales v. United States, 635 F.3d 39, 42-43 (2nd Cir. 2011)(citing Strickland v. Washington, 466 U.S. 688, 686 (1984).

The Sixth Amendment right to counsel extends to the plea bargaining process.  See Missouri v. Frye, 132 S. Ct. 1389, 1407 (2012)(the reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that he Sixth Amendment requires in the process at critical stages).  In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial is almost always the critical point for a defendant). Frye, supra 1407.

In order to succeed on an ineffective assistance of counsel claim, a petitioner must satisfy a two prong test.  Strickland v. Washington, 466 U.S. 688, 686)(1984). First, he must show that "counsel's performance was deficient," that is, that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment," i.e. "that counsel's representation fell below an objective standard of reasonableness.  Hill v. Lockhart, 474 U.S. 52,

6

58 (1985). Second, Petitioner must show that, "the deficient performance prejudiced the defendant.  To establish prejudice the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different.  Id., at 694.

In the context of pleas a defendant must show a reasonable possibility that the outcome of the plea process would have been different with competent advice.  Frey, ante at 1407.

Where, as here, the ineffective advice led to an offer's rejection a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea would have been presented to the court (i.e. that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction, or sentence, or both, under the offers terms would have been less severe than under the judgment and sentence that in fact were imposed. Lafler v. Cooper, 132 S.Ct. 1376 (2012).

**ii. §2255 Hearing**

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).  "To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a "plausible" claim of ineffective assistance of counsel, not that "he will necessarily succeed on the claim."

A hearing is appropriate to determine issues of fact and law relevant to a §2255 petition's claim of deficient advice regarding a plea offer where: (1) the petitioner, in a sworn statement,

asserts that he would have pleaded guilty if given sound advice, and (2) there is some objective

evidence, which may include significant sentencing disparity, that the petitioner in fact would

have pleaded guilty. <u>Raysor v. United States</u>, 647 F.3d 491, 495 (2nd Cir. 2011).

      The issues to be resolved at such a hearing are:

> (i) what would have been reasonable legal advice in the
> circumstances; (ii) whether original counsel gave such
> advice; (iii) what the considered basis for original
> counsel's actions was; and (iv) whether "but for"
> counsel's alleged ineffectiveness [petitioner] would
> have accepted the government's plea offer and pled
> guilty".

<u>Raysor</u>, F.3d at 497.

## D.  <u>ARGUMENT</u>

### i.  <u>FAILURE TO PROVIDE PROPER LEGAL ADVICE CONCERNING PLEA</u>

      To succeed in demonstrating ineffective assistance of counsel a Petitioner must

demonstrate two things (1) that counsel's performance was unreasonably deficient under

prevailing professional standards, and (2) but for counsel's unprofessional errors, there exists a

reasonable probability that the result would have been different.  <u>Strickland v. Washington</u>, 466

U.S. 668, 687-688 (1984); <u>See</u> <u>Strickland</u>, at p.695 and <u>United States v. Torres</u>, 129 F.3d 710 (2nd

Cir. 1997).  The Petitioner must demonstrate that counsel's representation fell below an objective

standard of reasonableness by a preponderance of the evidence. <u>See</u> <u>Strickland</u>, <u>supra</u>. at p.694.

      As discussed in more detail below Petitioner satisfies each prong of <u>Strickland's</u>

requirements.

### a. *Effectiveness During Plea Stage*

Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.  Boria v. Keane, 99 F.3d 492, 496 (2nd Cir. 1996).   Petitioner alleges that prior counsel failed to provide such informed advice to him in any meaningful manner.

The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case.  Counsel may and must give the client the benefit of counsel's professional advice on this crucial decision.  Boria v. Keane, supra at p. 496. Effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered.

The Model Rules of Professional Conduct, Rule 1.4(b) provides that a "lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation".  When a plea offer is made "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will be crucial to the decision whether to plead guilty".  Purdy v. United States, 208 F.3d 41, 45 (2nd Cir 2000), United States v. Gordon, 156 F.3d 376, 380 (2nd Cir. 1998).

When a plea offer is made and there is reasonable probability that the defendant is uncertain about the sentencing exposure he faces, whether or not he accepts the plea, a lawyer unquestionably has a duty to inform his client of the sentencing exposure he faces if he accepts the offer and if he does not.  See Carron v. Smith, 644 F.Supp 2d, 452, 467 (Scheindlin, J. S.D.N.Y. 2009).

Here, as was the case in <u>Lefler v. Cooper</u>, 132 S. Ct. 1376 petitioner, based upon clearly erroneous advice provided by his legal counsel, rejected a plea agreement in detrimental reliance upon that improper advice.

**b.  Counsel's Advice With Respect to the Plea Offer Fell Below the Standard of Adequate Assistance of Counsel Guaranteed by the Sixth Amendment**

### i. Factual Background

In the instant matter, Counsel was particularly ineffective by Sixth Amendment standards in that they failed in a very significant way to advise Petitioner of the true sentencing exposure he faced if convicted at trial.  More significantly Counsel's erroneous evaluation of Locurto's maximum exposure were he to be convicted of the Joseph Platia homicide was critical to Petitioner's decision to reject the government's plea offer and proceed to trial.

Prior to trial the government conveyed a plea offer of 20 years imprisonment in satisfaction of all charges, including the Joseph Platia homicide, contained in the Indictment. Subsequent to the government conveying this offer both Mr. Batchelder and Ms. Oppenheim, the legal team then representing him, met with Petitioner at the Metropolitan Detention Center to amongst other thing discuss the plea offer.

Petitioner alleges that prior counsel failed to properly advise him of the ramifications of sentencing if convicted.  During this meeting Ms. Oppenheim advised Mr. Locurto:

> "(a) that in my opinion, applying the 1988 amendment to 18 U.S.C. § 1963(a) to a homicide which occurred in 1986 raised an *ex post facto* issue because of the increased penalty provided by the amendment; (b) that whether the offense was capped at 20 years because of the *ex post facto* Clause was an open question in the Second Circuit; and (3) that I believed it likely he would prevail on that issue in the Court of Appeals should he convicted at trial".

(See Exhibit "B" Declaration of Laura A. Oppenheim, Esq. ¶6).

Essentially when Petitioner was erroneously advised that his after trial maximum sentencing exposure was 20 years imprisonment, he balanced that erroneous legal opinion against a fixed plea sentence of the same duration and chose to go to trial and the possibility of acquittal - or so he thought - with the knowledge that he could not receive any greater sentence if convicted.

Based upon this advice petitioner made a rational decision to reject the government's plea offer of a sentence of twenty years imprisonment, and proceed to trial. Petitioner did so in reliance upon the advice of counsel that the maximum sentence he could receive were he to be convicted of the murder of Joseph Platia was twenty years, not mandatory life imprisonment.

### ii. *Relevant Law*

That advice was plainly wrong. The law in this Circuit, was and remains well settled that where, as here, an individual is charged with in a RICO conspiracy that "straddles" the 1988 amendment of 18 U.S.C. § 1963(a), there is no *ex post facto* violation in imposing a life sentence. See <u>United States v. Minicone</u>, 960 F.2d 1099 (2nd Cir. 1992).

An offense "straddles" the amendment when: (1) the charged RICO Conspiracy precedes the amendment and continues thereafter; (2) the defendant is charged with a RICO predicate Racketeering Act which is committed prior to the date of the amendment; and (3) there is evidence that the defendant continued to participate in the racketeering enterprise subsequent to the date of the amendment. See <u>United States v. Minicone</u>, 960 F.2d 1099, 1111 (2nd Cir. 1992).

The overarching conspiracy, charged in Count One of the indictment encompassed the time period from 1985-2003, both before and after, i.e. "straddling" the amendment. It charged

Locurto with three Racketeering Acts: (1) the Murder and Conspiracy to Murder Joseph Platia in 1986; (2) a Conspiracy to Distribute Marijuana between 1991-1999; and (3) a Conspiracy to distribute Ecstasy (MDMA) in 1999.  Therefore, on its face the Indictment met the definition of "straddling" contained in Minicone, precluding any *ex post facto* violation in imposing a mandatory life sentence were Locurto to be convicted of the Platia murder and either of the two post amendment RICO acts.

Moreover, even were he not to be convicted of either of the two post amendment RICO predicate acts, were the jury to determine by proof beyond a reasonable doubt that he continued to participate in the RICO enterprise post-amendment, the *ex post facto* prohibition would likewise have been inapplicable subjecting Locurto to a mandatory life sentence.  See United States v. Firment, 296 F.3d 118, 121 (2nd Cir, 2002)(no *ex post facto* challenge lies where the defendant continued to act after the effective date of the law being amended, even though the particular crime challenged was committed prior to the passage of the amendment).  See also United States v. Monaco, 194 F.3d 381, 386 (2nd Cir 1999).

Each of these decisions reference United States v. Story, 891 F.2d 988, 994 (2nd Cir 1989).  In Story, Judge Newman discusses in detail the legislative history of the 1987 amendments to the Sentencing reform Act of 1984 as well as the amendment to the 18 U.S.C. 1963(a).  In so doing the court both reiterates the principle of "straddling" offenses, as it relates to Second Circuit precedent and holds that the doctrine applies to the 1988 amendment. See United States v. Story, 891 F.2d 988, 991-92 ( citing United States v. Borrelli, 336 F.2d 376, 386 n. 5)(2nd Cir 1964), cert. denied, 379 U.S. 960(1965; United States v. Markham, 193 F.2d 574 (2nd Cir. 1972; and Livolsi v. United States, 343 U.S. 979 (1952).

12

In summary, minimal legal research by petitioner's counsel would and should have led to the discovery of these clear and widely cited precedents which directly and unambiguously hold that the law in this Circuit, was and remains well settled that where an individual is charged in a RICO conspiracy that "straddles" the 1988 amendment of 18 U.S.C. § 1963(a), there is no *ex post facto* violation in imposing the enhanced sentence provided by the amendment.  Here, a mandatory life sentence.  See <u>United States v. Minicone</u>, 960 F.2d 1099 (2nd Cir. 1992).

There was no reasonable basis for counsel to have concluded that an *ex post facto* challenge to a sentence of a sentence of mandatory life imprisonment were petitioner to be convicted of the Platia homicide was an "open question" in the this Circuit.  Nor, given the government's expected proof of Locurto's participation in two post amendment RICO predicate offenses, was there any likelihood that he could prevail on appeal were he to be sentenced to life imprisonment.

### iii. Analysis

As discussed above prior to trial the government, through defense counsel, offered Petitioner the opportunity to dispose of the charges contained in the Indictment by pleading guilty to a number of the Racketeering Acts charged therein in exchange for a sentence of twenty (20) years imprisonment.

Petitioner requested advice from his Counsel as to the benefits of accepting such a plea offer as contrasted to the sentencing exposure he might face were he to decline the offer and be convicted following trial.  More specifically, Locurto requested advice concerning his potential sentencing exposure were he to be convicted of Racketeering Act One, the murder of Joseph Platia.  Crucial to that decision was the legal question of whether the "1988 amendment to 18

13

U.S.C. 1963(a), which increased the penalty for violating the statute from 20 years to life, could be applied to [the Joseph Platia] homicide that occurred in 1986, two years prior to the amendment".  (See Exhibit "B" Declaration of Laura A. Oppenheim, Esq.).

As demonstrated above it is indisputable that prior counsel failed to properly advise him of the ramifications of sentencing if convicted.  Based upon this advice petitioner made a rational decision to reject the government's plea offer of a sentence of twenty years imprisonment, and proceed to trial.  Petitioner did so in reliance upon the advice of counsel that the maximum sentence he could receive were he to be convicted of the murder of Joseph Platia was twenty years imprisonment.

Petitioner submits that counsel's representation fell below the objective standard of reasonableness required pursuant to Strickland v. Washington, 466 U.S. 688 (1984) and Boria v. Keane, 99 F. 3d 492 (2nd Cir. 1996).  At the very least, in order to provide effective assistance, Counsel should provide - and defendant should be able to rely upon - Counsel's independent examination of the facts and laws involved in the matter and rely upon that informed opinion as to whether a guilty plea should be entered.  Von Moltke v. Gilles, 332 U.S. 708, 721 (1948).  Where, as here, well-intentioned though it may be, counsel gives seriously erroneous and incorrect information concerning the potential sentencing exposures and, as a consequence, fails to advise the defendant as to the advantages and disadvantages of an offered plea bargain, the defendant has received ineffective assistance of counsel

## ii. PREJUDICE

Where a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.  If that right is denied, prejudice can be shown if loss

14

of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.  See Lafler v. Missouri, 132 S. Ct. 1376 (2012).

The second Strickland prong requires a showing of prejudice which, in the Second Circuit, requires "some objective evidence other than the defendant's assertions".  Pham v. United States, 317 F.3d 178, 182 (2nd Cir. 2003).  Generally a defendant suffers prejudice if there is a reasonable probability that this reliance upon counsel's ineffective assistance affected the outcome of the proceedings.  A significant sentencing disparity in combination with defendant's statement of his intention to have pled guilty is sufficient to support a prejudice finding.  United States v. Gordon, 156 F.3d 376, 381 (2nd Cir. 1998).

The Supreme Court has held that even a minimum amount of additional jail time may constitute prejudice.  Glover v. United States, 531 U.S. 198, 203 (2001)(increase from 6 to 21 months due to counsel's error constituted prejudice required pursuant to Stickland).  In Lafler v. Cooper, the court concluded that the petitioner's sentence, of 181 months which was 3 ½ times greater than the plea offer of 58 months imprisonment was clearly " a significant disparity in sentencing" sufficient to support an objective finding of Stickland prejudice.  Lafler v. Cooper, Id.  Here the disparity between the plea offer - twenty years - and the sentence imposed - life imprisonment - is stark.   Clearly such is a "significant sentencing disparity".

The petitioner herein rejected the government's plea offer in reliance upon legal counsel's advice that his maximum sentencing exposure was the same twenty years imprisonment presented in the plea offer.   As stated in Petitioner's Affidavit supporting this Petition:

> "If I had known that there was no chance of me getting less
> than life I would have taken the plea.  Why would I take
> a twenty year plea when I had nothing to lose.  All I could

15

get is twenty years if I blew trial anyway."

(See Exhibit "C" Affidavit Stephen Locurto ¶ 9).

Had Locurto been aware that he was indeed facing a mandatory life sentence, were he to be convicted of the Joseph Platia homicide, his thinking concerning the disposition of the Indictment by plea of guilt in return for fixed 20 year sentence would have been quite different. Had counsel correctly advised Locurto in response to his specific inquiry that the law was well settled in the Second Circuit that there was no *ex post facto* prohibition in sentencing him to a mandatory life sentence if convicted of the murder of Joseph Platia, there is more than a "reasonable probability" that Petitioner would taken a very different view of the plea proposal. Indeed, as Locurto states in his Affidavit - "he would have taken the plea".

In these circumstances to establish Strickland, supra,  prejudice a defendant must show that but for the ineffective advice of counsel there is a "reasonable probability" that the plea would have been presented to the court (i.e. that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances) that the court would have accepted its terms, and that the conviction, or sentence, or both, under the offers terms would have been less severe than under the judgment and sentence that in fact were imposed. Lafler v. Cooper, 132 S.Ct. 1376, (2012).  Petitioner has presented to this Court such objective evidence.

As required pursuant to the plea proposal made by the government in its letter of November 1, 2005, a sufficient number of petitioner's co-defendants agreed to accept the government's proposal and as a consequence the offer would have remained available had petitioner agreed to accept it.  The Court accepted each of petitioner's co-defendants guilty pleas

pursuant to the terms of the plea agreement which had been offered to they and the petitioner, and each were later sentenced by the court in conformity with the plea agreement.

Given Petitioner's assertion that he would have accepted the plea offer coupled with the significant sentencing disparity there is clearly sufficient objective evidence to support the conclusion that there is a reasonable probability that Locurto would have accepted the plea offer if properly advised by prior counsel. Accordingly it is therefore submitted that Petitioner has satisfied the prejudice prong of the <u>Strickland</u> test.

As discussed in more detail above it is submitted that prior counsel's failure to intelligently advise Petitioner of what course of conduct to follow constituted ineffective assistance of counsel. Counsel, knowledgeable in the law of this Circuit, should have realized that the law was clearly settled in this Circuit that the imposition of a life sentence were petitioner to be convicted of the murder of Joseph Platia was mandatory. Therefore the offer to dispose of the entirety of the Indictment against Petitioner by guilty plea and a sentence of 20 years was a beneficial offer, one that Petitioner should not have passed up for a trial where his exposure was a mandatory life sentence.

"Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea from the government" <u>Pham v. United States</u>, 317 F.3d 178, 182 (2d Cir. 2003).

Petitioner asserts that Counsel erroneously advised him that the maximum sentence he could receive if convicted of the murder of Joseph Platia was 20 years and not a mandatory life sentence. As a consequence his attorneys never informed him that he should accept the government's plea offer of 20 years imprisonment, that such an offer was a good or beneficial

offer or that he should accept the offer because proceeding to trial would be too dangerous. Indeed, to the contrary, based upon counsel's erroneous advice it was logical and rational for petitioner to conclude that the government's plea offer was not beneficial and that he stood nothing to lose by proceeding to trial as a consequence of counsel's erroneous advice that the maximum sentence he could receive post-conviction was twenty years imprisonment.

It is therefore submitted that Petitioner was denied effective assistance of counsel.

### iii. <u>REMEDY</u>

In <u>Lafler v. Copper</u>, <u>supra</u>, the Supreme Court was confronted with the issue of what the appropriate remedy should be once a petitioner has demonstrated that ineffective assistance of counsel has caused the rejection of a plea thereby leading to a trial and more severe sentence.

Addressing the issue Justice Kennedy states "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests".  <u>Lafler</u>, <u>supra</u> at 27

Where, as here, a plea agreement offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judges sentencing discretion after trial, a re-sentencing based upon the conviction at trial may not suffice.  <u>Lafler</u>, <u>Id</u>, citing <u>Riggs v. Fairman</u>, 399 F.3d 1179, 1181 (9th Cir. 2005).

Justice Kennedy continues:

> "In these circumstances the proper exercise of discretion to remedy
> the constitutional injury may be to require the prosecution to re-offer
> the plea proposal.  Once this occurred, the judge can then exercise
> discretion in deciding whether to vacate the conviction from trial
> and accept the plea or leave the conviction undisturbed...".

<u>Lafler</u> at 27.

18

In implementing a remedy the Court states the trial court must weight various factors. Without fully setting forth these factors the Court provides sentencing courts guidance in fashioning an appropriate remedy stating:

> "Principles elaborated over time in decisions of state and federal courts and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion". Id.

The court does notes two considerations of relevance.  First, a court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions.

As noted above Locurto in his Affidavit makes clear that had he been appropriately advised he would have accepted the plea offered.  Indeed, he requested the specific advice concerning his exposure in determining whether to accept the proffered guilty plea.   It was primarily as a consequence of his being misinformed by counsel that his maximum exposure following trial was identical to the offer made by the government that he elected to forego the plea offer and proceed to trial.

Second (although not necessarily a constitutional rule) the time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial. Id at 28.

Here, as in Lafler petitioner has shown that but for counsel's deficient performance there is a reasonable probability that he and the trial court would have accepted the plea, and being convicted at trial, petitioner received a sentence grossly disproportionate to that he would have

received under the plea.

Therefore, as in <u>Lafler</u> the proper remedy in this circumstance is to Order the government to re-offer the plea agreement. Because Petitioner stands ready to accept that plea offer, the court can then exercise its discretion in determining whether to vacate the convictions and re-sentence petitioner pursuant to the plea agreement.

## <u>CONCLUSION</u>

**PETITIONER WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL
THE PETITION SHOULD BE GRANTED**

Dated: Lake Success, New York
　　　　November 17, 2012

Respectfully submitted,

ALAN M. NELSON, ESQ. (3891AMN)
3000 Marcus Avenue, Suite 1E5
Lake Success, New York 11042
(516)328-6200

20

# EXHIBIT "A"

JAN 16 2006 22:32 FR                                    TO 912125046090          P.02/03



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GDA:TM                          *One Pierrepont Plaza*
F#.2003R02533                   *Brooklyn, New York 11201*

                 *Mailing Address:   147 Pierrepont Street*
                                    *Brooklyn, New York 11201*

                              November 1, 2005

<u>**By Fax and Federal Express**</u>
Ronald Fischetti, Esq.   *(Att'y for L. Attanasio)*
Michael Rosen, Esq. *(Att'y for P. Calabrese)*
Lisa Scolari, Esq. *(Att'y for J. DeSimone)*
Alan Futerfas, Esq. *(Att'y for R. Attanasio)*
John Wallenstein, Esq. *(Att'y for M. Cardello)*
Neil Checkman, Esq. *(Att'y for P. Cosoleto)*
Harry C. Batchelder, Jr. *(Att'y for LoCurto)*
Flora Edwards, Esq. *(Att'y for J. Palazzolo)*
Joel Winograd, Esq. *(Att'y for R. Riccardi)*
Gail Laser, Esq. *(Att'y for A. Basile)*
Ronald Rubinstein, Esq. *(Att'y for P. Romanello)*
Sarita Kedia, Esq. *(Att'y for P. Romanello)*
Ronald Russo, Esq. *(Att'y for P. Romanello)*

             Re:  United States v. Anthony Urso, et al.
                  <u>Criminal Docket No. 03-1382 (NGG)</u>

Dear Counsel:

        The assigned prosecutors in this matter are prepared to
recommended to their supervisors that plea agreements be extended to
the following defendants which will recommend the following
sentences (provided these recommended sentences are consistent with
proposed charges under the applicable provisions of United States
Sentencing Guidelines).   Please note that because the proposed
sentences listed below have not been approved by the Office, they do
not constitute formal "offers."   To the extent that formal offers
are extended to include the terms below (again consistent with the
applicable Guidelines ranges), at least ten defendants must pled
guilty pursuant to these terms and all ten defendants must do so
before November 21, 2005.

JAN 16 2006 22:32 FR                                    TO 912125046090      P.03/03

| No. | Defendant | Term of Incarceration |
|-----|-----------|----------------------|
| 1 | Louis Attanasio | 20 Years |
| 2 | Peter Calabrese | 15 Years |
| 3 | Joseph DeSimone | 15 Years |
| 4 | Robert Attanasio | 10 Years |
| 5 | Michael Cardello | 15 Years |
| 6 | Peter Cosoleto | 15 Years |
| 7 | Steven LoCurto | 20 Years |
| 8 | John Palazzolo | 15 Years |
| 9 | Richard Riccardi | 15 Years |
| 10 | Anthony Basile | 15 Years |
| 11 | Patrick Romanello | 15 Years |

To the extent counsel seeks to meet with the assigned prosecutors with respect to this proposal, the government is available to do so on Friday, November 11, 2005 at 1:00 p.m. on the 19th Floor of the United States Attorney's Office.  Please indicate below whether you are available to meet on this date.

Very truly yours,

ROSLYNN MAUSKOPF
United States Attorney

By: _____

Greg D. Andres
Mitra Hormozi
John Buretta
Assistant U.S. Attorneys
(718) 254-6273/6518/6314

☐ _____  [Name], Counsel for the defendant
                            **will** attend the meeting scheduled
for November 11, 2005.

☐ _____  [Name], Counsel for the defendant
                            **will not** attend the meeting
scheduled for November 11, 2005.

2

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
STEPHEN LoCURTO,

               Petitioner,

           -against-                           DECLARATION

UNITED STATES OF AMERICA,

               Respondent.
-------------------------------------------------------X
STATE OF NEW YORK   )
                    )   ss.:
COUNTY OF NEW YORK  )

        LAURA A. OPPENHEIM, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury:

        1.     I am an attorney duly admitted to practice law in the State of New York and before this Court, with law offices at 260 Madison Avenue, 17th Fl, New York, New York 10016.  I was previously of-counsel to Harry C. Batchelder, Jr., Mr. LoCurto's trial counsel.

        2.     I submit this declaration at the request of Mr. LoCurto, in support of his *pro-se* § 2255 application.

        3.     It is my recollection, that sometime after being assigned to represent Mr. LoCurto, Mr. Batchelder contacted me and requested my assistance defending Mr. LoCurto, with an emphasis on helping researching motions and any technical legal issues that might arise during the case.

        4.     One of this issues Mr. Batchelder needed researched was the question of whether an 1988 amendment to 18 U.S.C. § 1963(a), which increased the penalty for violating the statute

1

from 20-years to life, could be applied to a homicide that occurred in 1986, two years prior to the amendment.

5.      It was my opinion at the time that application of the increased penalty for a homicide committed two years prior to the amendment would violate the *ex post facto* clause of the Constitution.

6.      Sometime thereafter, I attended a meeting with Mr. Batchelder and Mr. LoCurto at the Metropolitan Detention Center ("MDC") in Brooklyn. At that meeting, I advised Mr. Locurto: (a) that in my opinion, applying the 1988 amendment to 18 USC § 1963(a) to a homicide which occurred in 1986 raised an *ex post facto* issue because of the increased penalty provided by the amendment; (b) that whether the offense was capped at 20 years because of the *ex post facto* Clause was an open question in the Second Circuit; and (c) that I believed it likely he would prevail on that issue in the Court of Appeals should he be convicted at trial.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. 28 U.S.C. § 1746. Executed June 2, 2010.

Laura A. Oppenheim

2

**EXHIBIT "C"**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————X

UNITED STATES OF AMERICA,            :        Civil Case NO. _____

        Respondent,                 :
                                      :        Criminal Case No. 03-1382(S-1)
  -against-                          :                   (NGG)
                                      :
STEPHEN LOCURTO,                      :             AFFIDAVIT
                                      :
        Petitioner.                 :
                                      :
———————————————————X

STATE OF PENNSYLVANIA   )
                        )        SS.:
COUNTY OF UNION         )

    I, Stephen LoCurto, being duly sworn and under penalties of
perjury, do hereby state as follows:

    (1) I am the Petitioner in the above entitled case and as such
am familiar with the facts and circumstances of this case.

    (2) Prior to trial, the government offered me a twenty (20)
year plea.  See Exhibit **C**, Government's plea offer of 11/01/05.

    (3) that some time after being offered the 20 year plea by the
government, who were represented by AUSA Greg D. Andres, I had a
meeting with Laura A. Oppenheim, Esq., and Harry Batchelder, Esq.,
at the Metropolitan Detention Center (MDC) in Brooklyn.  At that
meeting, we all discussed the plea with Attorney Batchelder and I
paying close attention to Attorney Oppenheim as she explained her
research to us with emphasis on the **ex post facto** clause.  She
advised me that applying the 1988 amendment of 18 U.S.C. § 1963(a)
to the 1986 alleged murder of Joseph Platia, raised an **ex post facto**
issue because of the increased penalty from 20 years, to life as

provided in the amendment; further, whether the 1986 homicide was
capped at 20 years because of the **ex post facto** problem, was an
open question in the Second Circuit; and lastly, it was likely that
I would prevail on that issue should I be convicted at trial; if
not at the district level, then in the Circuit.

(4) In a subsequent meeting, the first of many to follow, I
questioned Attorney Batchelder about Attorney Oppenheim's legal
research and presentation.  "She knows what she is talking about",
said Attorney Batchelder.

(5) During yet another meeting with Attorney Batchelder, he
told me that the government offered me 6 years of jail credit which
comprised two federal racketeering acts I was convicted of: (1)
conspiracy to distribute MDMA (ecstacy) in 00 Crim. 146 (RR),
sentence already served of fifteen (15) months and (2) conspiracy
to distribute marijuana in 02 Crim. 307 (NGG), sentence already
served of twenty-seven months.  In addition, I would be entitled
to be credited for six (6) months that was credited to me for
erroneous time at liberty granted by the Western District of
Pennsylvania, Magistrate Keith A. Pesto, in CV-01-336J and approved
by Chief United States District Court Judge D. Brooks Smith (same
case).  Lastly, I would be entitled to be credited two (2) years in
State prison for the gun found on me in connection with the Platia
homicide which was used by the prosecution in New York indictment
# 3356/86.  In response, I asked him "if the government would put
this in writing?", he said, "no, but if the government doesn't
object to it, it was likely that the judge would give it to me."

Still, in another meeting, I asked Attorney Batchelder "to make the

2

government a counter offer of ten (10) years like other codefendants were offered." Attorney Batchelder afterward approached the government with my request, however, the government declined. When I questioned him about declining, he said the government won't come off the twenty years. I said, "Is this because that's all I can get?" And Harry answered, "yes". As it turned out, all ten of my codefendants took the government's plea offer and the Court supported the sentence recommended by the government in those pleas and in some instances, the Court lowered the sentences.

(6) In subsequent discussions with Attorneys Oppenheim and Batchelder, it was advised that if the government didn't offer me a better plea than the max of 20 years, that I shouldn't take the 20 years.

(7) I discussed all the advice Attorneys Oppenheim and Batchelder gave me with my family. The focus of our family discussion was that if the government is not going to offer me less than 20 years, and after being advised by counsel on the plea, I was convinced the most time I could get was 20 years, then I should go to trial. It was the most difficult decision I ever had to make.

(8) Subsequent to reading the Second Circuit's Opinion regarding the ex post facto issue, my family and I were devastated. We did not prevail on the ex post facto issue on appeal.

(9) If I had known that there was no chance of me getting less than life I would have taken the plea. Why would I take a twenty year plea when I had nothing to lose? All I could get is twenty years if I blew trial anyway. Attorney Oppenheim even went on to tell me that even if I'm acquitted of the homicide again due to the

3

relevant conduct the judge will give me twenty years anyway.  See Exhibit **D**, Sentencing transcript, pp. 20-21.  Attorney Oppenheim's advice was the most important fact in why I chose to go to trial. Further your affiant sayeth not.

I Stephen LoCurto hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge information and belief.

Dated: _____ *9-26-10*

J. Reitz Case Manager
Authorized by the Act of July 7,
1955, as amended to administer
oaths (18 USC 4004)

Stephen LoCurto
Reg. No. 58095-053
U.S.P. Allenwood
P.O. Box 3000
White Deer, PA 17887

Sworn to before me this
*26*th day of September, 2010

_____
U.S.P. Allenwood Case Manager
Authorized to Administer Oaths

4