UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STEPHEN LOCURTO,

                      Petitioner,                     **MEMORANDUM & ORDER**

         -against-                               **10-CV-4589 (NGG) (JO)**

UNITED STATES OF AMERICA,

                      Respondent.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Stephen LoCurto brings this proceeding pursuant to 28 U.S.C. § 2255, seeking to vacate his conviction and life sentence for racketeering conspiracy. (Mot. to Vacate ("Pet.") (Dkt. 1).) Petitioner alleges ineffective assistance of both trial and appellate counsel, as well as the improper suppression of exculpatory information. (Id.) On August 16, 2012, the court referred the Petition to Magistrate Judge James Orenstein for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (Order (Dkt. 18).) Judge Orenstein then determined, on consent of the parties and with the court's approval, to bifurcate consideration of the Petition, addressing first the threshold issue of whether Petitioner received objectively unreasonable legal advice concerning a potential plea bargain before trial. (See Sept. 3, 2013, Min. Entry (Dkt. 51); Sept. 3, 2013, Tr. (Dkt. 64) at 5, 12-19.)

On January 29, 2016, Judge Orenstein issued an R&R concluding that it was objectively unreasonable for counsel to provide the legal advice at issue, and recommending that the court conduct—or refer to him—an evidentiary hearing to determine whether that advice had any cognizable prejudicial effect on the outcome of Petitioner's criminal case. (R&R (Dkt. 72) at 1.) Judge Orenstein further recommended that the court deny Petitioner's claim of ineffectiveness of

1

appellate counsel and defer ruling on other claims pending litigation of an amended petition. (Id.) The Government has objected to the R&R (Obj. ("Gov't's Objs.") (Dkt. 74)), and Petitioner has responded to those objections (Reply in Opp'n ("Pet'r's Resp.") (Dkt. 77)). For the following reasons, the court OVERRULES the Government's objections and ADOPTS the R&R in full.

## I. BACKGROUND

The court assumes familiarity with the underlying facts of Petitioner's criminal case. See United States v. Rizzuto, No. 03-CR-1382 (NGG); United States v. Amato, 306 F. App'x 630 (2d Cir. 2009), cert. denied, 558 U.S. 940 (2009). As explained in Judge Orenstein's R&R, the primary issue before the court at this stage of the bifurcated review of the Petition is whether Petitioner received objectively unreasonable legal advice when considering whether to pursue plea negotiations with the Government before trial. (See R&R at 2-5.)

In 1988, Congress increased—from 20 years to life—the maximum sentence that could be imposed on a defendant convicted of racketeering conspiracy, but only for cases in which "the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment[.]" 18 U.S.C. § 1963(a). As Judge Orenstein noted in the R&R, the only racketeering act attributed to Petitioner for which the maximum penalty included life imprisonment was the 1986 murder of Joseph Platia, which pre-dated the 1988 statutory amendment. (See R&R at 2-3.) Therefore, "LoCurto's participation in the charged racketeering conspiracy . . . was a so-called 'straddle offense,' meaning that it occurred over a period that straddled the effective date of the statute that increased the maximum penalty." (Id. at 3.) While it is now undisputed that Second Circuit case law allows for the imposition of a life sentence for such a straddle offense (see id. at 8), the question at issue here is "whether, during the pretrial

2

proceedings, . . . competent counsel would have . . . advised a client that it was still an open question in this jurisdiction whether a life sentence in such circumstances would violate the Constitution's Ex Post Facto Clause" (id. at 3).

This question is relevant because on November 1, 2005, prosecutors sent a letter concerning plea negotiations to attorneys representing Petitioner and 10 of his codefendants. (Id. at 4.) The letter advised that the Government was not yet making a "formal" offer but that prosecutors were prepared to recommend dispositions providing for specified maximum sentences for each defendant, on the condition that at least 10 of those 11 defendants pleaded guilty by November 21, 2005. (Id.) The maximum sentence suggested for Petitioner was 20 years. (Id.)

The parties agree that Petitioner's trial attorney, Harry C. Batchelder, Jr., sought the legal advice of attorney Laura A. Oppenheim concerning the maximum possible sentence that Petitioner could face if convicted at trial. (Id. at 3.) The parties also agree that in a meeting between Petitioner and both attorneys, "Oppenheim expressed her opinion that the availability of a life sentence in the circumstances of this case was an open question in the Second Circuit, that application of the 1988 statutory amendment to the straddle offense in this case would violate the Ex Post Facto Clause, that the maximum allowable sentence for the charged offense was therefore twenty years, and that she believed LoCurto would prevail on that issue on appeal should he be convicted." (Id.)

Nine of the 11 defendants named in the Government's November 1, 2005, letter ultimately pleaded guilty, and each was sentenced to a prison term that was less than or equal to the maximum sentence that had been specified in the letter. (Id. at 4.) Petitioner and another codefendant, Anthony Basile, did not plead guilty; they were later convicted at trial and

3

sentenced to life in prison. (Id.) Now, Petitioner maintains that he rejected an opportunity to plead guilty because he believed that the maximum sentence of 20 years, as specified in the letter, was the most that he would face if convicted at trial. (LoCurto Aff. (Mem. in Supp. of Mot. to Vacate ("Pet'r's Mem.") (Dkt. 2), Ex. B) ¶ 7.) He insists that had he been properly advised as to his sentencing exposure, he would have entered into a plea agreement with the Government and thus would not have received a life sentence. (Id. ¶¶ 6-9.)

Petitioner raises two additional grounds for relief. First, he claims that he was denied effective assistance of appellate counsel, on the basis of the fact that appellate counsel did not challenge the trial court's admission of testimony from three accomplice witnesses, each of whom conveyed a statement from non-party Gabe Infanti that Petitioner had committed the Platia murder. (See Pet. at 5; Pet'r's Mem. at 11-12; R&R at 5, 12.) Next, Petitioner claims that the Government unlawfully suppressed evidence that impeached the credibility of accomplice witness Frank Lino, thereby depriving Petitioner of his rights to due process and the effective assistance of trial counsel. (See Pet. at 6; Pet'r's Mem. at 12-14; R&R at 5, 12.)

## II. LEGAL STANDARDS

### A. Review of a Report and Recommendation

In reviewing the R&R of a dispositive matter from a magistrate judge, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000); see also Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502 (KAM) (JO), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010) ("Where no objection to the Report and Recommendation has been filed, the district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks and citation omitted)).

The district court must review de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). However, to obtain this de novo review, an objecting party "must point out the specific portions of the report and recommendation to which they object." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS) (WDW), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the proposed findings and recommendations."). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (citations omitted); see also Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)"). "A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, left with the definite and firm conviction that a mistake has been committed.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339-40 (S.D.N.Y. 2009) (quoting United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006)). Finally, courts "ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance." Kennedy v. Adamo, No. 02-CV-1776 (ENV) (RML), 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (internal quotation marks and citation omitted), aff'd, 323 F. App'x 34 (2d Cir. 2009) (summary order); see also Allen v. United Parcel Serv., Inc., 988 F. Supp. 2d 293, 299 (E.D.N.Y. 2013); Forman v. Artuz, 211 F. Supp. 2d 415, 418 (S.D.N.Y. 2000).

## B. Ineffective Assistance of Counsel During Plea Bargaining

To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). See Williams v. Taylor, 529 U.S. 362, 390 (2000). First, under the "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 688. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). Second, under the "prejudice" prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94.

A defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citing Missouri v. Frye, 132 S. Ct. 1399 (2012); Padilla v. Kentucky, 559 U.S. 356, 375 (2010); Hill v. Lockhart, 474 U.S. 52, 57 (1985)). Notwithstanding the strong presumption of counsel's reasonableness, the Second Circuit has held that the gross underestimation of a defendant's sentencing exposure may constitute ineffective assistance. See Davis v. Greiner, 428 F.3d 81, 88-89 (2d Cir. 2005) (finding that because "'[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty,'" defense

counsel is ineffective for "'grossly' underestimating a defendant's potential sentencing exposure at trial" (quoting United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998))).

## III. DISCUSSION

### A. Those Portions of the R&R to Which No Objections Were Made

Judge Orenstein's R&R focused primarily on the first prong of Petitioner's claim of ineffectiveness of trial counsel. However, Judge Orenstein also recommended that the court deny Petitioner's claim of ineffectiveness of appellate counsel and defer ruling on Petitioner's other claims pending litigation of an amended petition. (See R&R at 1, 12-14.) Neither party has objected to these recommendations, and the time to do so has passed. See Fed. R. Civ. P. 72(b)(2). (See also R&R at 14 ("Any objections to this [R&R] must be filed no later than February 15, 2016.").) Therefore, the court reviews these portions of the R&R for clear error. See Gesualdi, 2010 WL 985294, at *1; La Torres, 216 F. Supp. 2d at 159; cf. 28 U.S.C. § 636(b)(1). Finding no clear error, the court adopts these portions of the R&R; accordingly, the court denies Plaintiff's motion with respect to the claim of ineffectiveness of appellate counsel and defers ruling on other claims pending litigation of an amended petition. See Porter v. Potter, 219 F. App'x 112 (2d Cir. 2007) (summary order).

### B. The Government's Objections

The Government's objections are not entirely easy to discern. Although the Government identifies several broad arguments (see Gov't's Objs. at 13), these arguments are not all framed as objections to specific portions of the R&R, and the court has found additional grounds for objection throughout the Government's brief, as explained below. Out of an abundance of caution, the court has identified four objections and will address them each individually. First, the Government argues that the court should reject Judge Orenstein's conclusion that Oppenheim

7

provided objectively unreasonable legal advice regarding Petitioner's sentencing exposure. (Id. at 13, 28-32.) Second, the Government maintains that regardless of whether Oppenheim's advice was objectively unreasonable, the fact that she was not Petitioner's counsel of record precludes Petitioner's ineffective assistance claim. (Id. at 27-28.) Third, the Government urges the court to reject Judge Orenstein's recommendation to hold—or refer to him—a hearing to determine whether Petitioner suffered prejudice as a result of the legal advice at issue. (Id. at 13, 32-42.) Fourth, the Government requests that the court issue a dispositive order denying Petitioner's entire claim of ineffective assistance of trial counsel, despite the fact that Judge Orenstein has not yet addressed the second prong of that claim. (See id. at 13.) For the following reasons, the court overrules each of the Government's objections.

1. Whether Oppenheim's Advice Was Objectively Unreasonable

In the R&R, Judge Orenstein noted the parties' agreement that Oppenheim's legal analysis of Petitioner's sentencing exposure was incorrect at the time, as was her view that a life sentence in this case would violate the Ex Post Facto Clause. (R&R at 8.) The question Judge Orenstein faced, then, was whether Oppenheim's analysis was not just wrong, but objectively unreasonable. (Id.)

In finding that Oppenheim's legal analysis was indeed objectively unreasonable, Judge Orenstein agreed with Petitioner's argument that it was "plainly at odds with a Second Circuit decision that was already over a decade old when she gave her advice." (Id. (citing United States v. Minicone, 960 F.2d 1099 (2d Cir. 1992)).)[1] Although the Government argued that Minicone

---

[1] In Minicone, the Second Circuit held that mandatory application of the United States Sentencing Guidelines to the defendant's RICO conspiracy conviction did not violate ex post facto principles, even though the defendant personally committed no predicate acts after the effective date of the Guidelines. See Minicone, 960 F.2d at 1111. Subsequent cases affirmed this holding. See, e.g., United States v. Eisen, 974 F.2d 246, 268 (2d Cir. 1992) (holding that defendant in RICO conspiracy could be sentenced under Guidelines for pre-Guidelines conduct where it was foreseeable that conspiracy would continue to operate and defendant took no action to withdraw from conspiracy); United States v. Alkins, 925 F.2d 545, 549 (2d Cir. 1991) (defendants properly convicted on certain counts under

had not squarely addressed the precise issue that Oppenheim faced, Judge Orenstein found this argument unpersuasive, noting that "the holding and rationale of Minicone necessarily compelled the conclusion that it would not offend the Constitution to impose a life sentence on LoCurto in this case." (Id. at 11.) Judge Orenstein further observed that Minicone "did not in any way suggest that the holding or rationale of that case was in any way limited to the precise circumstances in which the issue arose" (id.), and he noted that the Second Circuit itself cited directly to Minicone as clearly established law in rejecting Petitioner's ex post facto argument on appeal (id. (citing Amato, 306 F. App'x at 633)).

The Government raises a two-pronged objection to Judge Orenstein's determination on this point, maintaining that "the R&R's analysis of Minicone and the state of the law at the time Ms. Oppenheim rendered her advice is incomplete[.]" (Gov't's Objs. at 13.) First, the Government argues that because Minicone dealt with the application of the Sentencing Guidelines to conduct that pre-dated their enactment, the case "did not squarely address the question of whether a subsequently-increased statutory penalty could be applied to a continuing offense that straddled the date of the statutory amendment." (Id. at 13 n.4.) However, this contention appears to be a restatement of the same argument considered and rejected by Judge Orenstein. (See R&R at 11.) Accordingly, the court reviews this portion of the R&R for clear error and finds none. See Pall Corp., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (noting that a court reviews an R&R only for clear error where a party "simply reiterates his original arguments").

---

statute that became effective after defendants committed all of their fraudulent acts, where defendants could have "taken steps to prevent the final element from occurring" after statute's effective date). The Second Circuit later summarized the state of the law on this issue in United States v. Trupin, 117 F.3d 678 (2d Cir. 1997), explaining that the application of a new statute to a continuing crime does not violate ex post facto principles as long as the defendant has the opportunity to terminate the criminal conduct within a reasonable time of the statute's effective date. Id. at 686.

9

Even under de novo review, the court would reach the same conclusion as Judge Orenstein. As explained in the R&R, regardless of whether Minicone squarely addressed the "precise circumstances" at issue in Petitioner's case, the Second Circuit clearly viewed the case as having firmly precluded Petitioner's ex post facto argument on appeal. (See R&R at 11 (citing Amato, 306 F. App'x at 633).) Furthermore, as Petitioner points out, Minicone was not the first case in the Second Circuit to address this issue. (See Pet'r's Resp. at 7-9.) In fact, Minicone relies on a line of cases reaching back decades. See Minicone, 960 F.2d at 1111 ("We have found that in general no Ex Post Facto violation occurs by application of the Guidelines to 'straddle crimes'" (citing United States v. McCall, 915 F.2d 811, 816 (2d Cir. 1990); United States v. Story, 891 F.2d 988, 991-92 (2d Cir. 1989))); see also United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999) (rejecting ex post facto challenges, and noting that "[i]t is well-settled that when a statute is concerned with a continuing offense, the Ex Post Facto clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute" (internal quotation marks and citation omitted)); Story, 891 F.2d at 994 ("With respect to continuing offenses, the elimination of ex post facto problems does not require limiting the Guidelines to offenses begun after November 1, since enhanced sentencing provisions may validly be applied to continuing offenses that straddle the effective date of such provisions, as has been held in this Circuit[.]" (citing United States v. Borelli, 336 F.2d 376, 386 n.5 (2d Cir. 1964), cert. denied, 379 U.S. 960 (1965))); United States v. Markman, 193 F.2d 574, 576 (2d Cir. 1952) (rejecting defendant's argument that he could not be sentenced for violating a provision that did not become effective until after he ceased taking an active role in the conspiracy, because the conspiracy continued after the later date and defendant did not

affirmatively disassociate from it). Accordingly, the court overrules the Government's objection on this point.

Next, the Government argues that a contemporaneous, 2005 decision by Judge Jack Weinstein of the Eastern District of New York lends support to Oppenheim's analysis, rendering her advice not objectively unreasonable. (Id. (citing United States v. Taveras, 401 F. Supp. 2d 304, 306 (E.D.N.Y. 2005)).) In Taveras, the defendant was charged with homicide in furtherance of a drug conspiracy and faced the death penalty. 401 F. Supp. 2d at 305. While the drug conspiracy continued after the federal death penalty statute became effective, the murder itself pre-dated the enactment of the legislation. Id. Judge Weinstein granted the defendant's motion to strike that count of the indictment, holding that the Ex Post Facto Clause prevented the prosecution of the defendant under a death penalty statute that did not exist at the time of the murder. Id. at 306-07. Noting that Petitioner relied on Taveras in his appeal, the Government now maintains that the case "provided an entirely reasonable basis for an attorney to argue against the application of the higher penalty available as a result of the 1988 amendment to the RICO statute given that the penalty, just like the penalty in Taveras, was increased after the homicide at issue." (Gov't's Objs. at 31-32.)

As an initial matter, the court notes that the Government appears not to have cited Taveras in its briefing before Judge Orenstein. As courts in this circuit and elsewhere have held, "a litigant is not allowed to oppose a magistrate's Report and Recommendation by suddenly asserting new arguments that were not presented to the magistrate originally." Kennedy, 2006 WL 3704784, at *3; see also Allen, 988 F. Supp. 2d at 299 ("[Plaintiff] did not present this argument or case law to [the magistrate], so this Court need not consider it."). Nonetheless, courts may exercise their discretion to consider new arguments when reviewing an R&R where

there are compelling reasons to do so. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998). Here, Petitioner did indeed reference Taveras in his appeal to the Second Circuit, and the record was available to Judge Orenstein. See Brief for Defendant-Appellant at 9-10, Amato, 306 F. App'x 630 (No. 07-CR-712), 2007 WL 6449580. Accordingly, the court will consider Taveras in reviewing this portion of the R&R.

However, on de novo review, the court finds that Taveras does not undermine Judge Orenstein's determination that Oppenheim's advice was objectively unreasonable. In fact, the Government distinguished Taveras in its own brief before the Second Circuit:

> The only authority cited by LoCurto, [Taveras], turned upon an interpretation of the elements of the particular statute involved in that case, 18 U.S.C. § 924(j)(1). The court apparently concluded that statute did not charge a continuing offense, holding that '[t]he crime was completed when the murder was committed during the conspiracy.' [Taveras, 401 F. Supp. 2d at 307]. That was clearly not true for the racketeering conspiracy of which LoCurto was convicted in this case. Moreover, to the extent, if at all, that the court intended its ruling to apply to continuing offenses, it failed to cite or analyze the precedents of this Court . . . . Thus, Taveras provides scant support for LoCurto's argument in this case.

Brief for the United States at 34 n.20, Amato, 306 F. App'x 630 (No. 07-CR-712), 2008 WL 6099300. The court finds this argument compelling and notes that the Second Circuit did not see fit to address Taveras in rejecting Petitioner's ex post facto argument on appeal. See Amato, 306 F. App'x at 633 ("We reject this argument because LoCurto continued to act in the conspiracy after the effective date of the challenged amendment." (citing Minicone, 960 F.2d at 1111)). Furthermore, even if Taveras were not distinguishable, there is no indication that Oppenheim relied on—or was even aware of—the case when she provided her advice. Accordingly, the court finds that the decision in Taveras did not provide a reasonable basis for Oppenheim's erroneous legal advice. The court agrees with Judge Orenstein that Oppenheim's

advice was objectively unreasonable and, accordingly, overrules the Government's objection on this point.

### 2. Whether Petitioner Was Correctly Advised of His Sentencing Exposure

Next, the Government argues that regardless of whether Oppenheim's advice was objectively unreasonable, Petitioner cannot prevail on his ineffective assistance claim because Oppenheim was not his counsel of record. (Gov't's Objs. at 27-28.) The Government notes that Petitioner's appointed trial counsel correctly advised Petitioner that he faced the possibility of a life sentence if convicted at trial. (Id. (citing Decl. of Harry C. Batchelder, Jr. ("Batchelder Decl.") (Gov't's Objs., Ex B (Dkt. 74-2)) ¶¶ 5, 8).) Therefore, the Government maintains that Petitioner's counsel "at all times provided LoCurto with constitutionally sufficient representation, notwithstanding the fact that LoCurto received inconsistent advice from Ms. Oppenheim." (Id. at 28.)

This objection is not properly before the court, as it is not directed at any portion of the R&R. This R&R is concerned only with the question of whether the legal advice itself violated the performance prong of Strickland. (See Sept. 3, 2013, Tr. at 10-11.) As Judge Orenstein explained to the parties: "If the answer to that is no[,] that's the end of it and no hearing is necessary. If the answer to that is yes[,] then we get to the second issue raised . . . which is whether Ms. Oppenheim's status not being counsel of record precludes a successful Strickland motion." (Id.) The court expects that Judge Orenstein will address the issue of Oppenheim's status in the subsequent R&R; accordingly, the Government's objection is overruled.

### 3. Whether Petitioner is Entitled to a Hearing Regarding Prejudice

After concluding that Oppenheim had provided objectively unreasonable legal advice to Petitioner, Judge Orenstein determined that "as a result the petitioner's ineffective assistance

13

claim cannot be resolved without an evidentiary hearing about whether that advice caused the petitioner any cognizable prejudice." (R&R at 13.) Judge Orenstein therefore recommended that the court conduct, or refer to him, such a hearing. (Id.)

The Government objects to Judge Orenstein's determination that a hearing is necessary, arguing that regardless of whether Oppenheim's advice was objectively unreasonable, Petitioner has failed to show that he is entitled to a hearing under 28 U.S.C. § 2255. (Gov't's Objs. at 32.) Specifically, the Government maintains that Petitioner cannot establish prejudice, because: (1) the record does not demonstrate that Petitioner received a "formal" plea offer (id. at 33-34 (citing Lafler, 132 S. Ct. at 1387 (2012))); (2) he has not shown a reasonable probability that he would have pled guilty even if he had received a formal plea offer (id. at 34-38 (citing United States v. Frederick, 526 F. App'x 91, 93 (2d Cir. 2013))); and (3) he has not shown a reasonable probability that the court would have accepted the purported 20-year plea deal even if the offer existed (id. at 38-41).

The Government's objection includes a lengthy discussion of statutory standards and caselaw addressing when a habeas petitioner is entitled to a hearing on an ineffective assistance claim, none of which are addressed in Judge Orenstein's R&R. Accordingly, the court finds that this objection warrants de novo review. However, for the following reasons, the court agrees with Judge Orenstein's determination that a hearing is necessary to determine whether Petitioner suffered prejudice.

When considering a § 2255 motion, the district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255. "With respect to claims of ineffective assistance of counsel, the petitioner need establish only that he has a 'plausible' claim of ineffective assistance, not that 'he

will necessarily succeed on the claim.'" Siraj v. United States, 999 F. Supp. 2d 367, 371 (E.D.N.Y. 2013) (quoting Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000)). In determining whether to hold a hearing, the district court should consider whether a factual dispute exists. Knight v. Phillips, No. 05-CV-2749 (NG), 2012 WL 5955058, at *25 (E.D.N.Y. Nov. 28, 2012). "Where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997).

The first ground for the Government's objection is that Petitioner cannot establish a plausible claim for relief because he did not receive a "formal" plea offer. (Gov't's Objs. at 20-22, 33-34.) For support, the Government cites the companion cases of Lafler and Frye, in which the Supreme Court clarified the contours of the Sixth Amendment right to counsel in the context of plea negotiations. While Lafler made no mention of formal—as opposed to informal—plea offers, the Court did observe that "[i]f no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." Lafler, 132 S. Ct. at 1387. In Frye, which dealt with trial counsel's failure to communicate a plea offer to the defendant, the Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. at 1408.

Most courts to address this issue have interpreted Lafler and Frye to require the extension of a formal plea offer in order for a petitioner to prevail on claims of ineffective assistance in the context of plea negotiations. See, e.g., Mavashev v. United States, No. 11-CV-3724 (DLI), 2015 WL 1508313, at *9-11 (E.D.N.Y. Mar. 31, 2015) (rejecting attempt to extend Lafler to "informal

plea negotiations"); Diallo v. United States, No. 12-CV-3310 (MEA), 2014 WL 4460364, at *6 (S.D.N.Y. Sept. 10, 2014) ("Because there was no formal plea deal ever offered by the government, Diallo's claim of prejudice . . . fails."); Williams v. United States, No. 08-CR-0112 (GZS), 2013 WL 2155390, at *4 (D. Me. May 17, 2013) ("When there is no formal offer on the table, this particular duty does not arise."); Silva v. United States, No. 12-CV-0898 (DGK), 2013 WL 1628444, at *4 (W.D. Mo. Apr. 16, 2013) (holding that "the movant must prove that the alleged plea agreement was formally offered by the Government").

However, not all courts have taken such a formalistic view of the plea bargaining process.[2] In United States v. Gordon, 156 F.3d 376 (2d Cir. 1998) (per curiam), which pre-dated Lafler and Frye, the Second Circuit rejected the distinction between formal and informal offers, holding that "whether the government . . . made a formal plea offer was irrelevant," and finding that the petitioner "was nonetheless prejudiced because he did not have accurate information upon which to make his decision to pursue further plea negotiations or go to trial." Id. at 381. More recently, this court held that the lack of a formal offer "strongly weighs against a finding that [the petitioner] would have pled guilty"; however, the court treated the existence of a formal offer as an important but non-dispositive "factor[] affecting whether a petitioner has proven prejudice in the plea bargaining context." DeFilippo v. United States, No. 09-CV-4153 (NGG), 2013 WL 817196, at *6 (E.D.N.Y. Mar. 5, 2013) (citing Lafler, 132 S. Ct. at 1385).[3]

---

[2] Commentators have also expressed doubt as to whether the Supreme Court intended to established a "formal offer" requirement in Lafler or Frye. See Sabrina Mirza, Note, Formalizing the Plea Bargaining Process After Lafler and Frye, 39 Seton Hall Legis. J. 487, 499 (2015) ("The Supreme Court uses the word 'formal' in Frye, but not in Lafler. The inconsistent use of 'formal offer' between the two decisions suggests that the Court did not intend to limit its holdings to formal offers."); Jenny Roberts, Effective Plea Bargaining Counsel, 122 Yale L.J. 2650, 2671 (2013) ("Surely, if the Court meant to limit the right to effective assistance to informing and counseling defendants about formal plea offers the prosecution has extended, it would not have repeatedly used the words 'plea bargaining,' 'plea negotiations,' and 'negotiation of a plea bargain.'").

[3] It is also important to note that while the court denied the habeas petition in DeFilippo, in part due to the lack of a formal plea offer, it nonetheless ordered a hearing on the ineffective assistance claim. See DeFilippo, 2013 WL 817196, at *7 n.4.

Furthermore, it is not always entirely clear what distinguishes a formal plea offer from an informal offer or a mere proposal for further negotiation. In suggesting that prosecutors and trial courts adopt measures to formalize plea offer procedures, the Frye Court explained that "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." Frye, 132 S. Ct. at 1409. However, as the Court recognized, plea bargaining is, "by its nature, defined to a substantial degree by personal style," id. at 1408, and formalization of the plea bargaining process varies widely, see id. at 1409 (citing different states' procedures for documenting plea offers).

Even courts that have required a formal plea offer in these situations do not always specify what such formality would entail, with many implying that the distinction is based on whether there was a written offer with definite terms, as opposed to an oral proposal, or no proposal at all. In Mavashev, for example, the district court rejected the petitioner's claim that trial counsel had failed to consult him regarding informal plea proposals that arose from "ongoing discussions with the government," noting that absent any formal documentation, "allegations of insufficiently communicated plea offers are easily fabricated after the fact." 2015 WL 1508313, at *9; see also Barnes v. United States, No. 09-CR-1053 (SAS), 2013 WL 3357925, at *7 (S.D.N.Y. July 2, 2013) (rejecting ineffective assistance claim for lack of a formal plea offer, because "it would be entirely speculative to consider the terms, including the length of sentence, of a theoretical plea bargain"); United States v. Waters, No. 11-CR-100 (JRP), 2013 WL 3949092, at *8 (E.D. Pa. July 31, 2013) ("While we have been unable to find any authority defining the requisite elements of a formal plea offer, it is clear that an oral discussion of the sentencing range for a possible plea agreement that does not include an

17

agreement on the charges to which the defendant will plead guilty and the facts that he will admit, does not constitute a formal plea offer."). These cases, along with Frye, suggest that whether an offer is formal or not may have more to do with whether it is capable of documentation and less with whatever label prosecutors choose to apply to it.

Here, while the Government disclaimed the formality of the communication at issue, the fact that it was written, set a deadline for guilty pleas, and listed specific recommended maximum sentences for each defendant suggests that it might satisfy the Frye criteria for a formal offer, assuming there is such a requirement. Regardless, in order to determine the extent and formality of the purported plea offer, the court would benefit from more information about the context in which the letter was sent and whether it represented the entirety of the parties' communications regarding a possible plea. In fact, the parties were engaged in a discovery dispute on this very issue when Judge Orenstein suggested the bifurcated R&R process as a potential solution. (See R&R at 6 (describing Petitioner's request for "discovery of the government's internal deliberations about plea negotiations and its communications with Batchelder and other defendants' counsel on that subject," and noting that "[u]ltimately, the parties and I agreed that the most efficient way to proceed in the unusual circumstances of this case would be to postpone resolution of the thorny issues attendant to the discovery motion and instead bifurcate consideration of the Petition").) Because there remains a factual dispute as to whether Petitioner received a plea offer at all, let alone a formal one, the court finds that Petitioner is entitled to a hearing on this issue. (See id. (noting that the Government "disavowed having made a plea offer despite relying on Batchelder's declaration[,] which referred to the government's 'initial plea offer of twenty years'").)

Next, the Government argues against a hearing on the ground that Petitioner has failed to establish a reasonable probability both that he would have pled guilty (Gov't's Objs. at 34-38), and that the court would have accepted the purported 20-year plea deal (id. at 38-41). However, "reasonable probability" is the standard that Petitioner ultimately must meet in order to satisfy the prejudice prong of Strickland. See Lafler, 132 S. Ct. at 1384 ("In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."). As noted above, the standard for obtaining a hearing is significantly less burdensome: Petitioner "need establish only that he has a 'plausible' claim of ineffective assistance, not that 'he will necessarily succeed on the claim.'" Siraj, 999 F. Supp. 2d at 371 (quoting Armienti, 234 F.3d at 823).

In light of the factual dispute regarding the purported plea offer, and the fact that the court has adopted Judge Orenstein's determination that Oppenheim provided objectively unreasonable legal advice regarding Petitioner's sentencing exposure, the court finds that Petitioner has established a plausible claim of ineffective assistance and is therefore entitled to a hearing. Accordingly, the court overrules the Government's objection.

    4. <u>Whether the Court Should Deny Petitioner's Claim of Ineffective Assistance of Trial Counsel</u>

Finally, the Government makes a broad argument that the court should deny the entirety of Petitioner's claim of ineffective assistance of trial counsel, despite the fact that Judge Orenstein has not yet issued an R&R addressing the second prong of Petitioner's claim. (See Gov't's Objs. at 13.) This argument is not exactly an objection, so much as the conclusion to the

---

[4] As noted in the R&R, the Government reserves the right to object to any arguments put forward in an amended

Government's previous objections. If the court were to agree with the Government that Oppenheim's advice was not objectively unreasonable, or that Petitioner has no plausible claim of prejudice, then Petitioner would necessarily fail the Strickland criteria, and there would be no need for Judge Orenstein to continue his review of the claim. However, as discussed above, the court has overruled the Government's previous objections and adopts Judge Orenstein's recommendations. Accordingly, the court rejects the Government's final argument and grants Judge Orenstein leave to continue his review of Petitioner's claim of ineffective assistance.

## IV.  CONCLUSION

For the reasons set forth above, the court OVERRULES the Governments objections and ADOPTS IN FULL Judge Orenstein's R&R. Accordingly, the court DENIES Plaintiff's motion with respect to the ineffectiveness of appellate counsel claim and DEFERS ruling on other claims pending litigation of an amended petition.[4] Judge Orenstein may conduct an evidentiary hearing in reviewing the remainder of Petitioner's ineffectiveness of trial counsel claim.

SO ORDERED.

Dated: Brooklyn, New York
August 11, 2016

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

---

[4] As noted in the R&R, the Government reserves the right to object to any arguments put forward in an amended petition, on the grounds that such claims are untimely. (See R&R at 13 n.8.)