UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STEPHEN LOCURTO,

      Petitioner,          MEMORANDUM & ORDER

   -against-               10-CV-4589 (NGG)

UNITED STATES OF AMERICA,

      Respondent.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

   On October 4, 2010, Petitioner Stephen LoCurto filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Mot. to Vacate, Set Aside or Correct Sent. ("Pet.") (Dkt. 1).) Petitioner amended his petition on August 5, 2014 (the "Amended Petition"), to include a claim that the Government suppressed impeachment information about witness Frank Lino in violation of Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and Napue v. Illinois, 360 U.S. 264 (1959). (Am. Mot. to Vacate, Set Aside or Correct Sent. ("Am. Pet.") (Dkt. 62); see Mem. in Support of Am. Pet. (Dkt. 63).) Petitioner asserts that the Government failed to disclose information concerning Mr. Lino's involvement in the murder of Wilfred "Willie Boy" Johnson ("Wilfred Johnson") and heroin dealing, and argues that there is a reasonable probability that had this information been disclosed to the defense, the outcome of Petitioner's trial would have been different.[1] (Am. Pet. ¶ 43.) On August 5, 2014, Petitioner moved for discovery of the following documents (the "Discovery Motion"):

> [A]ll surveillance logs, tape recordings, transcripts, summaries, affidavits, reports, FBI 302's, DEA investigative reports, ATF investigative reports and all other documents, writings, memoranda and reports containing information on the murder of Wilfred 'Willie Boy' Johnson on August 29, 1988, for the period from 90

---

[1] The court reserves decision as to whether Petitioner is procedurally barred from raising this claim.

1

> days before the murder until 90 days after the murder, including all
> such information on the involvement of Frank Lino in the murder
> and all surveillance logs, tape recordings, transcripts, summaries,
> affidavits, reports, FBI 302's, DEA investigative reports, ATF
> investigative reports and all other documents, writings, memoranda
> and reports containing information on Frank Lino's involvement in
> heroin dealing from 1960 to June 2006 . . . [and] records of all of
> the information disclosed about Frank Lino from confidential
> informants and detailed in the affidavits of George Webb and
> Frank Hunt . . . .

(Mot. for Discovery (Dkt. 61).) For the reasons set forth herein, Petitioner's Discovery Motion is DENIED.

I. Discussion

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). For the court to grant the Discovery Motion, Petitioner must first demonstrate "good cause" to request the materials by making "specific allegations . . . [showing] reason to believe that . . . [he] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Id. at 908-09; see also Rules Governing Section 2255 Proceedings, Rule 6(a). The court determines that Petitioner has failed to satisfy this burden with respect to his Brady/Giglio and Napue claims.

A. Brady/Giglio Claim

To prevail on a Brady/Giglio claim, a petitioner must demonstrate: (1) that the evidence at issue is favorable to him, either because it is exculpatory or impeaching; (2) that the government suppressed the evidence, either willfully or inadvertently; and (3) that the evidence was material to the defense. Strickler v. Greene, 527 U.S. 263, 281 (1999); see Giglio, 405 U.S. at 154 (holding that the rule stated in Brady applies to evidence undermining witness credibility).

Even if the facts were fully developed and Petitioner could demonstrate that the first two prongs of the Brady/Giglio test were met, Petitioner will be unable able to establish the

2

materiality of the evidence at issue. Cf. United States v. Avellino, 136 F.3d 249, 256 (2d Cir. 1998) ("If the government has failed to disclose to the defendant evidence favorable to him, relief is warranted only if the evidence was 'material.'" (internal citations omitted)). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). The Second Circuit has repeatedly held that "[n]ew impeachment evidence is not material, and thus a new trial is not required when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." United States v. Parkes, 497 F.3d 220, 233 (2d Cir. 2007) (internal quotation marks and citations omitted); see, e.g, United States v. Basciano, 384 F. App'x 28, 31 (2d Cir. 2010) (summary order); Avellino, 136 F.3d at 256-57.

Here, evidence concerning Mr. Lino's alleged heroin dealing and his involvement in the murder of Wilfred Johnson would merely provide additional bases on which to impeach Mr. Lino and to undermine his credibility, which was already attacked at Petitioner's trial. Mr. Lino testified at trial that he had committed six murders and one attempted murder, among other crimes. (Tr. of Trial Proceeding in United States v. Locurto, 03-CR-1382 (NGG) ("Tr.") at 2036:15-2031:3, 2044:1-23.) Petitioner's trial counsel, Harry Batchelder, vigorously cross-examined Mr. Lino about these murders as well as Mr. Lino's prior drug crimes and loan-sharking activities. (Id. at 2205:1-2231:11, 2352:24-2353:1, 2367:3-6.)

Petitioner argues that the murder of Wilfred Johnson was "much more significant than the other murders that Lino admitted to [in] his testimony in the LoCurto trial" because Wilfred Johnson "was an FBI informant at the time he was killed." (Pet'r's Reply Mem. in Supp. of Discovery Mots. ("Reply Br.") (Dkt. 108) at 26.) Petitioner maintains that "if the jury had known that Lino was involved in the intentional killing of an important FBI informant, this

3

would have seriously damaged his credibility as a witness," and asserts that "[t]his is not a situation where 'just another murder' is attributed to the witness." (Id. at 27, 30.) The court finds this argument unconvincing. There is no basis to conclude that the jury would have considered the murder of an FBI informant to be substantively different than the killing of any other individual—or, indeed, of six other individuals. Mr. Lino's credibility was seriously attacked during Petitioner's trial. His involvement in multiple murders was front and center for the jury's consideration. The court, therefore, determines that the new impeachment evidence is cumulative and cannot be considered "material" under controlling Second Circuit case law. See, e.g., Basciano, 384 F. App'x at 31; Parkes, 497 F.3d at 233; Avellino, 136 F.3d at 256-57.

### B. Napue Claim

A conviction must be set aside if: (1) it was obtained using perjured testimony; (2) the prosecution knew, or should have known, of the perjury; and (3) "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (citing Napue). Petitioner argues that Mr. Lino testified falsely by failing to disclose his involvement in the murder of Wilfred Johnson and that the Government "must have known about his involvement" in the murder, yet intentionally suppressed this information. (See Reply Br. at 27.) Even assuming arguendo that these allegations are true, the court is unpersuaded that there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury." Agurs, 427 U.S. at 103.

The allegedly false testimony at issue concerns a collateral issue (i.e. Mr. Lino's criminal history) and "d[oes] not refute any of [Mr. Lino's] testimony against" Petitioner. United States v. Reyes, 49 F.3d 63, 68 (2d Cir. 1995). There is therefore no reason to think that "knowledge of th[e] . . . impeaching [facts], in addition to the numerous others used on cross-examination, would persuade a fact-finder to disbelieve [Mr. Lino's] testimony against [Petitioner]." Ostrer v.

4

United States, 577 F.2d 782, 787 (2d Cir. 1978); see United States v. White, 972 F.2d 16, 22 (2d Cir. 1992) (holding that newly discovered evidence that witness may have lied about his drug use "would have been merely the sort of cumulative impeachment material that is routinely held insufficient to warrant a new trial").

Moreover, even if the jurors had known that Mr. Lino omitted reference in his testimony to one of his many prior crimes, the court finds it improbable that this would have created sufficient doubt in the jurors' minds to affect the result of Petitioner's trial. As the Second Circuit has explained:

> [N]ew impeachment evidence may satisfy the 'reasonable likelihood' standard where a conviction depends on the testimony of a single government witness, or on a witness whose credibility was not attacked on cross-examination .... But where independent evidence supports a defendant's conviction, the subsequent discovery that a witness's testimony at trial was perjured will not warrant a new trial.

United States v. Wong, 78 F.3d 73, 82 (2d Cir. 1996) (internal citation omitted). Here, there is ample evidence supporting Petitioner's conviction of racketeering conspiracy, separate and apart from Mr. Lino's testimony. In response to special interrogatories, the jury found that the Government proved all three racketeering acts alleged against Petitioner: (1) the murder of Joseph Platia; (2) the marijuana distribution conspiracy; and (3) the ecstasy distribution conspiracy. (See Jury Verdict (Dkt. 914), United States v. Locurto, 03-CV-1382 (NGG).) Several cooperating witnesses connected Petitioner to the killing of Joseph Platia. (See, e.g, Tr. at 346-47, 915-16.) Moreover, there was testimony that just after the murder occurred, police officers stopped Petitioner near the murder scene and recovered a hot .38 caliber revolver from his jacket pocket. (See id. at 736:9-738:12, 3178:6-11). Ballistics analysis showed that the gun Petitioner possessed was the weapon used to kill Mr. Platia. (See id. at 851:5-13). As for his narcotics trafficking, Petitioner pleaded guilty to conspiring to distribute marijuana (id.

5

at 1192:18-1194:11) and ecstasy (id. at 2487:22-2490:13). In light of this powerful evidence of guilt, the court finds that there is not a reasonable likelihood that Mr. Lino's alleged perjury on a collateral issue would have affected the outcome of Petitioner's trial. The court therefore holds that Petitioner has not provided "specific allegations . . . [showing] reason to believe that . . . [he] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief [under Napue]," as is required for the court to grant the Discovery Motion. See Bracy, 520 U.S. at 908-09.

## II. Conclusion

Because Petitioner has not shown "good cause" for his discovery request, see Bracy, 520 U.S. at 908-09, the Discovery Motion (Dkt. 61) is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
November 30, 2016

NICHOLAS G. GARAUFIS
United States District Judge