UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
    STEPHEN LOCURTO,

                        Petitioner,                                      **MEMORANDUM & ORDER**

                                                                                  10-CV-4589 (NGG)

                 -against-

    UNITED STATES OF AMERICA,

                        Respondent.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

       On July 9, 2013, Petitioner Stephen LoCurto moved for discovery of "any and all notes, memoranda, records or other documentation of the United States Attorney's Office for the Eastern District of New York regarding the plea agreement proposal offered to Stephen LoCurto by the United States Attorney's Office in the matter of United States v. Stephen LoCurto, Cr. No. 03-1382 (S-1)" (the "Discovery Request"), in connection with his pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Mot. for Disc. (Dkt. 34).) After conducting a thorough search of its files, the Government produced to Petitioner's counsel the responsive, non-privileged documents that it was able to locate. (See Nov. 4, 2016, Ltr. (Dkt. 105).) The Government maintains that the remainder of the responsive documents that it located (the "Internal Documents")—i.e. "notes of AUSA Greg Andres, as well as an internal memorandum regarding the proposed plea agreements"—are not discoverable because they are protected by several privileges, including the work-product privilege. (Id. at 2; see also Dec. 5, 2016, Ltr. (Dkt. 111) at 2 (privilege log).) On December 12, 2016, this court held that the Government was not obligated to produce the Internal Documents and that no further discovery was warranted with respect to the Discovery Request (the "Discovery Order"). (Discovery Order (Dkt. 113).) Petitioner now moves for reconsideration of the Discovery Order, pursuant to Local

1

Civil Rule 6.3. (Mot. for Recons. (Dkt. 114).) For the reasons discussed below, Plaintiff's Motion for Reconsideration is DENIED.

I. **LEGAL STANDARD**

Local Civil Rule 6.3 provides that, within 14 days of the entry of an order, a party may move for reconsideration by filing a notice of motion and memorandum identifying "the matters or controlling decisions which counsel believes the Court has overlooked." Local Civ. R. 6.3. However, reconsideration of a previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." NEM Re Receivables, LLC v. Fortress Re, Inc., 187 F. Supp. 3d 390, 395 (S.D.N.Y. 2016) (quoting In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). The primary grounds justifying reconsideration are "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

A request for reconsideration under Local Rule 6.3 must point to controlling law or factual matters put before the court in that the movant believes the court overlooked, and that might reasonably be expected to alter the conclusion reached by the court. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); Anwar v. Fairfield Greenwich Ltd., 164 F. Supp. 3d 558, 560 (S.D.N.Y. 2016). Local Civil Rule 6.3 must be narrowly construed and strictly applied so as to "avoid duplicative rulings on previously considered issues" and prevent the rule from being used to advance theories not previously argued or "as a substitute for appealing a final judgment." Merced Irrigation Dist. v. Barclays Bank PLC, 178 F. Supp. 3d

181, 183 (S.D.N.Y. 2016) (quoting Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002)).

## II. DISCUSSION

Petitioner appears to assert three arguments as to why the court should reconsider its Discovery Order, which held that the Internal Documents were non-discoverable work-product. *First*, Petitioner maintains that the Order "does not take into account the fact that [he] cannot obtain [the Internal Documents], or their substantial equivalent, from any other source" and he has a "substantial need for discovery" of the Internal Documents, as the "information contained in the documents make up the core aspects of the essential elements of his case." (Mot. for Recons. at 3.) *Second*, Petitioner argues that the work-product privilege is inapplicable where, as here, "the activities of counsel are directly at issue in the litigation giving rise to the discovery request." (Id. at 2.) *Third*, he asserts that the Government has implicitly waived the work-product privilege in this case: "[T]he [G]overment's continued refusal to admit that it would have offered Mr. LoCurto a plea deal" gives Petitioner a "need to examine the documents" as the Government "unfairly seeks to use the privilege as both a 'shield and a sword' in this litigation." (Id.) None of these arguments, which are addressed in turn below, justify reconsideration of the Discovery Order.

### 1. Petitioner Has Not Shown the Requisite Substantial Need

A party seeking discovery of documents protected by the work-product privilege must show that it has a "substantial need" for the work-product materials and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Work-product that contains "mental impressions, conclusions, opinions, or legal theory of an

3

attorney" should be protected "unless a highly persuasive showing [of need] is made."[1] In re Grand Jury Proceedings, 219 F.3d 175, 190 (2d Cir. 2000) (internal citation omitted); Upjohn Co. v. United States, 449 U.S. 383, 400 (1981) ("Rule 26 accords special protection to work product revealing the attorney's mental processes."). Trial courts have "wide discretion in determining the existence of substantial need and undue hardship." Brock v. Frank V. Panzarino, Inc., 109 F.R.D. 157, 159 n.4 (E.D.N.Y. 1986).

As articulated in the court's Discovery Order, Petitioner has not made the required showing to justify disclosure of the Internal Documents. (Discovery Order at 3.) In his Motion for Reconsideration, Petitioner has not identified any matters not considered by the court "'that might reasonably be expected to alter the conclusion reached by the court.'" Cty. of Suffolk v. First Am. Real Estate Sols., 261 F.3d 179, 187 (2d Cir. 2001) (internal citation omitted). Nonetheless, the court takes this opportunity to clarify the reasoning underlying its Discovery Order.

One of the questions critical to resolving Ground One of Petitioner's habeas petition is whether the Government offered Petitioner a plea agreement in advance of Petitioner's criminal trial. On November 1, 2005, Assistant United States Attorney ("AUSA") Greg Andres sent a letter to attorneys representing Petitioner and 10 of his codefendants concerning plea negotiations (the "Andres Letter"). (Pet'r's Mem. of Law in Supp. of Mot. to Vacate (Dkt. 2) at

---

[1] The Government represents that the Internal Documents "contain mental impressions and conclusions of AUSA Andres." (Dec. 5, 2016, Ltr. at 2.)

ECF p.26.) The parties dispute whether the Andres Letter represented a plea offer.[2] (Compare Pet'r's Suppl. Mem. of Law in Supp. of Pet. (Dkt. 21) at 10, with Gov't Mem. of Law in Opp'n to Pet. (Dkt. 28) at 27). In its August 11, 2016, Memorandum & Order, the court noted that, in order to determine whether the Andres Letter was in fact a plea offer, formal or informal,

> the court would benefit from more information about the context in which the letter was sent and whether it represented the entirety of the parties' communications regarding a possible plea.

(See Order Adopting Report & Recommendation ("Order re R&R") (Dkt. 87) at 18.) While the Andres Letter has some indicia of a plea offer—it is written, sets a deadline for guilty pleas, and lists specific recommended maximum sentences for each defendant—it omits reference to the charges to which each defendant would need to plead guilty to, a material term of any plea agreement. See United States v. Waters, No. 11-CR-100 (JRP), 2013 WL 3949092, at *8 (E.D. Pa. July 31, 2013) ("While we have been unable to find any authority defining the requisite elements of a formal plea offer, it is clear that an oral discussion of the sentencing range for a possible plea agreement that does not include an agreement on the charges to which the defendant will plead guilty and the facts that he will admit, does not constitute a formal plea offer."). Whether the Government discussed with Petitioner's trial counsel, Harry Batchelder, the charges Petitioner would be required to plead to in exchange for the Government recommending a lower sentence is highly relevant to Petitioner's claim of ineffective assistance of counsel.

---

[2] The Government admits that the Andres Letter shows a willingness on the part of the Government to enter plea negotiations with the defendant. (Sept. 6, 2016, Ltr. (Dkt. 96) at 2.) The court is highly skeptical that mere willingness to negotiate a plea agreement provides sufficient grounds for a successful Strickland claim. See Lafler v. Cooper, 566 U.S. 156, 168 (2012) ("If no plea offer is made . . . the [Strickland] issue raised here simply does not arise."); Barnes v. United States, No. 09-CR-1053 (SAS), 2013 WL 3357925, at *7 (S.D.N.Y. July 2, 2013) ("With no plea offer ever made to [petitioner], it would be entirely speculative to consider the terms, including the length of sentence, of a theoretical plea bargain. . . . The absence of a plea offer is fatal to the ineffective assistance of counsel claims . . . .").

5

To that end, the Government has produced its written correspondence with Batchelder. (See Ex. B, Nov. 4, 2016, Ltr. (Dkt. 105-2).). While the Internal Documents could summarize Andres's verbal conversations with Batchelder, it is premature to conclude that the Internal Documents are the only available evidence as to the parties' verbal plea negotiations. Petitioner can question Batchelder and the former AUSAs who were involved in Petitioner's case about their plea negotiations at the future evidentiary hearing, which the court has already determined Petitioner is entitled to with respect to Ground One of his habeas petition (see Order re R&R at 19). If these witnesses are no longer available or are unable to recollect the information sought,[3] then Petitioner may be able to demonstrate substantial need for the Internal Documents. See Horn & Hardart Co. v. Pillsbury Co., 888 F.2d 8, 12 (2d Cir. 1989) (holding that plaintiff failed to show substantial need for attorney's meeting notes where plaintiff could depose individuals present at the meeting); Tribune Co. v. Purcigliotti, No. 93-CV-7222 (LAP) (THK), 1997 WL 10924, at *4 (S.D.N.Y. Jan. 10, 1997) ("[T]here is no substantial need where the information can be obtained by deposing witnesses, unless the witnesses are no longer available or are unable to recollect the information sought."). At this stage in the proceedings, however, Petitioner has not demonstrated that he has a "substantial need" for the Internal Documents and that he "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

---

[3] Petitioner's speculative and unfounded argument that "bias . . . may color [the former AUSAs'] recollections" and questioning these witnesses will "only result in 'self serving responses' which would not be as detailed or accurate as the documents themselves" (Pet'r's Mem. of Law in Supp. of Discovery Mots. (Dkt. 108) at 16-17) does not change the result here. See A.I.A. Holdings, S.A. v. Lehman Bros., Inc., No. 97-CV-4978 (LMM) (HB), 2002 WL 31385824, at *9 (S.D.N.Y. Oct. 21, 2002) ("It is always the case that a witness may lie at a deposition or may not have an accurate recollection. However, if those facts, without more, were sufficient to pierce a claim of work product, work-product protection, at least with respect to witness statements, would quickly become meaningless.").

## 2. Counsel's Intent Is Not "At Issue" in this Litigation

Petitioner also asserts that the work-product privilege is inapplicable where, as here, counsel's intent is "at issue."[4] (Mot. for Recons. at 2.) He maintains that the "best evidence" that the Andres Letter qualifies as a plea offer would be "the contemporaneous statements of witnesses, especially AUSA Andres and his subjective impressions of whether he was recommending such an offer." (Pet'r's Mem. of Law in Supp. of Discovery Mots. (Dkt. 108) at 15-16.) Therefore, according to Petitioner, "the mental workings of AUSA Andres in preparation of the [Internal Documents] are at issue, especially to the extent that h[e] and his colleagues['] mental processes reflect whether the letter eventually sent to prior counsel qualifies as a 'plea offer,' in the context of [the] Lafler/Fr[ye] analysis." (Id. at 16.) The subjective beliefs of the AUSAs as to whether the Andres Letter constitutes a plea offer are irrelevant, however. Although there is little guidance on what constitutes a "plea offer" for purposes of Strickland, none of the cases cited by the parties suggest that a prosecutor's subjective beliefs about whether there was a plea agreement are relevant to evaluating whether such offer was in fact made.

## 3. The Government Did Not Waive its Work-Product Privilege

"[I]mplied waiver may be found where the privilege holder 'asserts a claim that in fairness requires examination of protected communications.'" In re Grand Jury Proceedings, 219 F.3d at 182 (quoting United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)).

> Fairness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.' In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim

---

[4] The Second Circuit cases that Petitioner cites for this proposition actually address the separate question of waiver, which is discussed in Section II.3, infra.

7

or defense and then shield the underlying communications from scrutiny by the opposing party.

(Id.) Here, Petitioner presents no evidence that the Government has selectively disclosed the contents of the Internal Documents or relied on the Internal Documents to advance its own arguments in this proceeding. It is not as though the Government, relying on the Internal Documents, argues that it would never have offered Petitioner a plea offer. In fact, the Government has stated that it will not argue that it would not have offered Petitioner a plea offer:

> The Government cannot and will not argue that the 'government would not have offered LoCurto the opportunity to enter into a plea agreement consistent with the terms described in the government's letter dated November 1, 2005' had plea negotiations commenced in LoCurto's criminal case.

(Sept. 6, 2016, Ltr. at 2).

> [T]he government is not taking the position[,] as I've tried to clarify earlier[,] that we can prove definitively, he would have not been made that offer. We can't prove that. We cannot go back nine years in time -- eleven years in time at this point and say there's no circumstances under which he would have been made that offer, had plea negotiations commenced.

(Tr. of Aug. 23, 2016, Status Conference (Dkt. 91) 18:24-19:5.) Accordingly, it cannot be said that the Government is using the Internal Documents to support its position and yet refuses to grant Petitioner access to them. There is no basis, therefore, to find that the Government has impliedly waived the work-product privilege in this case.

## III. CONCLUSION

As Petitioner has not presented any compelling reason to reconsider the Discovery Order, his Motion for Reconsideration is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
March _9_, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge