D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEPHEN LOCURTO,

                Petitioner,                  **MEMORANDUM & ORDER**

      -against-                                        10-CV-4589 (NGG)

UNITED STATES OF AMERICA,

                Respondent.
-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Petitioner Stephen LoCurto's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2255 (the "Petition").[1] (Mot. to Vacate, Set Aside or Correct Sentence ("Pet.") (Dkt. 1); Am. Mot. to Vacate, Set Aside or Correct Sentence ("Am. Pet.") (Dkt. 62).) Petitioner asserts four legal claims—Grounds One through Four (defined below)—and requests an evidentiary hearing with respect to each claim. (See Pet'r Suppl. Mem. of Law in Supp. of Pet. ("Pet'r Suppl. Mem.") (Dkt. 21); Pet'r Mem. in Supp. of Am. Pet. ("Pet'r Am. Pet. Mem.") (Dkt. 112).) In its Memorandum and Order dated August 11, 2016, the court (1) ordered an evidentiary hearing on Ground One of the Petition; and (2) denied Ground Two in its entirety. (See Aug. 11, 2016, Mem. & Order (Dkt. 87) at 7, 19.) For the reasons set forth below, Grounds Three and Four are DISMISSED.

---

[1] "The Petition" refers to the claims raised in Petitioner's original petition as well as his amended petition.

1

## I. BACKGROUND

### A. Factual Background

The court assumes familiarity with the underlying facts of Petitioner's criminal case. See United States v. Rizzuto, No. 03-CR-1382 (NGG); United States v. Amato, 306 F. App'x 630 (2d Cir. 2009) (summary order), cert. denied, 558 U.S. 940 (2009).

### B. Procedural History[2]

On October 4, 2010, Petitioner filed his initial pro se petition for relief pursuant to 28 U.S.C. § 2255, alleging (1) ineffective assistance of trial counsel with respect to plea negotiations ("Ground One"); (2) ineffective assistance of appellate counsel ("Ground Two"); and (3) that the Government suppressed impeachment evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972) ("Ground Three").[3] (See Pet.; Pet'r Mem. of Law in Supp. of Pet. ("Pet'r Mem.") (Dkt. 2).)

On April 17, 2012, Magistrate Judge James Orenstein[4] appointed Alan M. Nelson as habeas counsel pursuant to the Criminal Justice Act ("CJA").[5] (Apr. 17, 2012, Order (Dkt. 11).) Petitioner filed a supplemental memorandum of law in support of the Petition. (Pet'r Suppl. Mem.) The Government opposed the Petition. (Gov't Mem. of Law in Opp'n to Pet. ("Gov't Opp'n") (Dkt. 28).) Petitioner filed a reply memorandum of law in further support of his Petition. (Pet'r Reply Mem. in Supp. of Pet. ("Pet'r Reply") (Dkt. 30).)

---

[2] This section only provides the procedural history relevant to Grounds Three and Four.

[3] Petitioner also appears to raise an ineffective assistance of counsel claim under the umbrella of Ground Three: Petitioner argues that "trial counsel was made ineffective because the prosecution was not forthright and truthful in its Brady obligations." (Pet'r Mem. at 12.)

[4] The court referred Petitioner's motion to appoint counsel to Judge Orenstein for decision pursuant to 28 U.S.C. § 636(b)(l)(A) and Federal Rule of Civil Procedure 72(a). (July 22, 2011, Order (Dkt. 9).)

[5] Attorney Bernard Freamon was later granted leave to act as co-counsel in this matter. (See Aug. 1, 2013, Order (Dkt. 45).)

2

On August 5, 2014, nearly four years after Petitioner filed his initial petition, Petitioner simultaneously moved to amend his Petition and filed an amended petition, which supplemented his argument as to Ground Three and added a fourth claim, alleging that trial counsel falsely advised him that additional funds for expert witness services were unavailable under the CJA and, thus, that trial counsel was ineffective ("Ground Four"). (See Mot. to Amend Pet. (Dkt. 60); Am. Pet.; Pet'r Mem. of Law in Supp. of Mot. to Amend Pet. (Dkt. 63).) The Government did not object to the filing of an amended petition but reserved the right to argue that Petitioner's claims are untimely. (See Feb. 22, 2016, Letter from Gov't (Dkt. 75).)

The court set a briefing schedule for the Amended Petition. (See Oct. 24, 2016, Order (Dkt. 104).) On December 9, 2016, Petitioner filed a supplemental memorandum of law in support of the Amended Petition. (Pet'r Am. Pet. Mem.) The Government submitted its opposition brief on January 20, 2017. (Gov't Opp'n to Am. Pet. ("Gov't Am. Pet. Opp'n") (Dkt. 119).) The Amended Petition has been fully briefed since February 3, 2017, when Petitioner submitted his reply memorandum of law in further support of the Amended Petition. (Pet'r Reply Mem. of Law in Supp. of Am. Pet. ("Pet'r Am. Pet. Reply") (Dkt. 120).)

## II. LEGAL STANDARD

A federal prisoner may file a petition in the sentencing court "to vacate, set aside, or correct" a conviction or sentence that was imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A federal habeas petitioner bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000). In this section, the court describes (1) two procedural bars that preclude certain federal habeas claims, and (2) the legal standard governing requests for evidentiary hearings.

## A. Procedural Bars

"Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (quoting Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002)).

First, "the so-called mandate rule bars re-litigation of issues already decided on direct appeal," including both "matters expressly decided by the appellate court" and "issues impliedly resolved by the appellate court's mandate." Id. (citations omitted); see also id. at 53-54 (explaining that the mandate rule applies in habeas proceedings under Section 2255).

Second, courts apply a "general rule that claims <u>not</u> raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003) (emphasis added); see also Yick Man Mui, 614 F.3d at 54. This bar does not apply to claims of ineffective assistance of counsel, however. "[T]he Supreme Court has explained that 'in most cases[,] a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.'" United States v. Rosa, 666 F. App'x 42, 44 (2d Cir. 2016) (summary order) (quoting Massaro, 538 U.S. at 504).

## B. Evidentiary Hearings

Courts are directed to hold evidentiary hearings in proceedings under Section 2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "A [petitioner] seeking a hearing on an ineffective assistance of counsel claim 'need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim.'" Raysor v. United

States, 647 F.3d 491, 494 (2d Cir. 2011) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)). This determination is "analogous" to summary judgment proceedings: "If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." Id. (quoting Puglisi, 586 F.3d at 213). The Second Circuit has held that in "cases involving claims that 'can be, and [are] often made in any case,' the judge may properly rely on his or her knowledge of the record and may permissibly forgo a full hearing and instead request letters, documentary evidence, and affidavits to aid in its resolution of the claim." Id. at 215. The trial judge is also in a position, based on the knowledge gained in the underlying criminal proceeding and in the role as trier of fact in the habeas proceeding, to determine that the petitioner had no chance of overcoming counsel's explanation. Id.

## III. DISCUSSION

### A. Ground Three

In Ground Three of the Petition, Petitioner argues that the Government suppressed impeachment information about witness Frank Lino in violation of Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and Napue v. Illinois, 360 U.S. 264 (1959). (Am. Pet. ¶ 7.) Petitioner specifically asserts that the Government failed to disclose information concerning Lino's involvement in the murder of Wilfred "Willie Boy" Johnson ("Wilfred Johnson") and heroin dealing, and argues that there is a reasonable probability that had this information been disclosed to the defense, the outcome of Petitioner's trial would have been different. (Am. Pet. ¶ 43.) He further argues that Lino testified falsely by failing to disclose his involvement in the murder of Wilfred Johnson and that the Government "must have known about [Lino's] involvement" in the murder, yet intentionally suppressed this information. (See Pet'r Am. Pet. Reply at 27; Am. Pet. ¶ 7.)

Petitioner also appears to raise an ineffective assistance of counsel claim under the umbrella of Ground Three.[6] Petitioner avers that trial counsel was ineffective because he failed to follow up with George Webb, a Special Agent with the Federal Bureau of Investigation, about various affidavits he swore to concerning Lino's drug trafficking. (Am. Pet. ¶ 42.)

For the following reasons, the court holds that Petitioner's Brady/Giglio and Napue claims are procedurally barred, and Petitioner's ineffective assistance of counsel claim, while not procedurally barred, fails as a matter of law. Accordingly, Petitioner's request for an evidentiary hearing as to the claims raised in Ground Three is DENIED and Ground Three is DISMISSED.

1. Brady/Giglio Claim

Petitioner concedes that he did not raise his Brady/Giglio claim on direct appeal of his conviction. (Pet'r Am. Pet. Reply at 1-2.) Notwithstanding this, Petitioner argues that he has demonstrated "cause and prejudice" sufficient to overcome the procedural default.[7] (Pet'r Am. Pet. Reply at 2 (citing Strickler v. Greene, 527 U.S. 263, 282-83 (1999)).) For the reasons set forth below, Petitioner's argument fails.

To prevail on a Brady/Giglio claim, a petitioner must demonstrate that: (1) the evidence at issue is favorable to him, either because it is exculpatory or impeaching; (2) the Government suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material to the defense. Strickler, 527 U.S. at 281; see Giglio, 405 U.S. at 154 (holding that the rule stated in Brady applies to evidence undermining witness credibility). For purposes of determining

---

[6] Petitioner states that "[w]hile [he] did allege in his initial petition that the failure to disclose Brady material rendered his counsel ineffective, the gravamen of his claim, as alleged in his amended petition, is that the facts concerning Frank Lino's involvement in the Johnson murder were totally and completely suppressed by the Government." (Pet'r Am. Pet. Reply at 3.)

[7] Petitioner does not argue that he is actually innocent—another potential basis for excusing procedural default. See Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) ("[T]he procedural default bar may be overcome only where the petitioner establishes either (1) 'cause' for the failure to bring a direct appeal and 'actual prejudice' from the alleged violations; or (2) 'actual innocence.'" (internal citation omitted)).

whether default is excused, "cause and prejudice parallel two of the three components of the alleged Brady violation itself." Strickler, 527 U.S. at 282. A petitioner shows "cause" when the reason for his failure to develop facts on appeal was the Government's suppression of the relevant evidence. Banks v. Dretke, 540 U.S. 668, 691 (2004). Prejudice exists when the suppressed evidence is "material" for Brady purposes. Id.

Even if the facts were fully developed and Petitioner could demonstrate "cause" for his procedural default—i.e., that the Government suppressed the impeachment evidence—Petitioner cannot establish the materiality of the evidence at issue and thus cannot establish "prejudice" resulting from the error.[8] "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). The Second Circuit has repeatedly held that "[n]ew impeachment evidence is not material, and thus a new trial is not required when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." United States v. Parkes, 497 F.3d 220, 233 (2d Cir. 2007) (internal quotation marks and citation omitted); see also United States v. Avellino, 136 F.3d 249, 256-57 (2d Cir. 1998) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by

---

[8] On November 30, 2016, the court denied Petitioner's request for discovery concerning Ground Three, holding that the allegedly suppressed impeachment evidence was not material under Brady/Giglio. (Nov. 30, 2016, Mem. & Order (Dkt. 109) at 3-4.)

7

reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.").[9]

Here, evidence concerning Lino's alleged heroin dealing and his involvement in the murder of Wilfred Johnson would merely provide additional bases on which to impeach Lino and to undermine his credibility, which was already attacked at Petitioner's trial. Lino testified at trial that he had committed six murders and one attempted murder, among other crimes. (Trial Tr. in United States v. Locurto, 03-CR-1382 (NGG) ("Tr.") 2026:15-2031:3, 2044:1-23.) Petitioner's trial counsel, Harry Batchelder, vigorously cross-examined Lino about these murders as well as Lino's prior drug crimes and loan-sharking activities. (Id. 2205:1-2231:11, 2352:24-2353:1, 2367:3-6.)

Petitioner argues that the murder of Wilfred Johnson was "qualitatively different and in the eyes of the law, much more serious than the other murders" that Lino admitted to because, at the time of his murder, Johnson was "a government informant with special protections under . . . criminal law." (Pet'r Am. Pet. Reply at 6.) "None of the murders he [admitted] to involved efforts to obstruct justice or otherwise impede or disrupt a federal investigation." (Id. at 4.) Petitioner maintains that if a jury had known about Lino's involvement in Johnson's murder, it "could well have affected [the jury's] assessment of [Lino's] testimony because such knowledge showed that [Lino] was capable of the highest form of corruption—murder to obstruct justice." (Id. at 6.)

The court finds this argument unconvincing. There is no basis to conclude that the jury would have considered the murder of an FBI informant to be substantively different than the

---

[9] Moreover, the Second Circuit has instructed that "the strength of the independent evidence of [defendant's] guilt increases the degree of significance that would need to be ascribed to the withheld impeachment evidence in order for it reasonably to undermine confidence in the verdict." United States v. Orena, 145 F.3d 551, 559 (2d Cir. 1998).

8

killing of any other individual—or, indeed, of six other individuals. Lino's credibility was seriously attacked during Petitioner's trial. His involvement in multiple murders was front and center for the jury's consideration. The court, therefore, determines that the new impeachment evidence is cumulative and cannot be considered "material" under controlling Second Circuit case law. See, e.g., Parkes, 497 F.3d at 233; Avellino, 136 F.3d at 256-57.

Because Petitioner cannot show that the evidence that the Government allegedly suppressed was material, he cannot demonstrate prejudice sufficient to excuse his procedural default. See Strickler, 527 U.S. at 282. Accordingly, Petitioner's Brady/Giglio claim is dismissed as procedurally barred.[10]

2. Napue Claim

A conviction must be set aside if: (1) it was obtained using perjured testimony; (2) the prosecution knew, or should have known, of the perjury; and (3) "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (citing Napue). Petitioner argues that Lino testified falsely by failing to disclose his involvement in the murder of Wilfred Johnson and that the Government "knew at the time that [Lino] testified that he was not telling the truth" and yet "failed to take steps to correct his testimony and did not bring his falsehoods to the attention of the court or defense counsel." (See Am. Pet. ¶ 3.) Even assuming arguendo that these allegations are true, the court is unpersuaded that there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury." Agurs, 427 U.S. at 103.

---

[10] See also Graves v. Phillips, 531 F. App'x 27, 29 (2d Cir. 2013) (summary order) (rejecting petitioner's argument that he was denied due process where district court failed to conduct evidentiary hearing on Brady claim where the allegedly suppressed evidence was not material); Bouloute v. United States, 645 F. Supp. 2d 125, 133 (E.D.N.Y. 2009) (denying petitioner's request for an evidentiary hearing where "the allegedly withheld information [was] insufficiently material to satisfy the prejudice requirement").

The allegedly false testimony at issue concerns a collateral issue (i.e. Lino's criminal history) and "d[oes] not refute any of [Lino's] testimony against" Petitioner. United States v. Reyes, 49 F.3d 63, 68 (2d Cir. 1995). There is therefore no reason to think that "knowledge of th[e] . . . impeaching [facts], in addition to the numerous others used on cross-examination, would persuade a fact-finder to disbelieve [Lino's] testimony against [Petitioner]." Ostrer v. United States, 577 F.2d 782, 787 (2d Cir. 1978); see United States v. White, 972 F.2d 16, 22 (2d Cir. 1992) (holding that newly discovered evidence that witness may have lied about his drug use "would have been merely the sort of cumulative impeachment material that is routinely held insufficient to warrant a new trial").

Even if the jurors had known that Lino omitted reference in his testimony to one of his many prior crimes, the court finds it improbable that this would have created sufficient doubt in the jurors' minds to affect the result of Petitioner's trial. As the Second Circuit has explained:

> [N]ew impeachment evidence may satisfy the 'reasonable likelihood' standard where a conviction depends on the testimony of a single government witness, or on a witness whose credibility was not attacked on cross-examination . . . . But where independent evidence supports a defendant's conviction, the subsequent discovery that a witness's testimony at trial was perjured will not warrant a new trial.

United States v. Wong, 78 F.3d 73, 82 (2d Cir. 1996) (internal citation omitted). Here, there is ample evidence supporting Petitioner's conviction of racketeering conspiracy, separate and apart from Lino's testimony. In response to special interrogatories, the jury found that the Government proved all three racketeering acts alleged against Petitioner: (1) the murder of Joseph Platia; (2) the marijuana distribution conspiracy; and (3) the ecstasy distribution conspiracy. (See Jury Verdict (Dkt. 914), United States v. Locurto, 03-CR-1382 (NGG).) Several cooperating witnesses connected Petitioner to the killing of Joseph Platia. (See, e.g., Tr.

10

346-47, 915-16.) Moreover, there was testimony that just after the murder occurred, police officers stopped Petitioner near the murder scene and recovered a hot .38 caliber revolver from his jacket pocket. (See id. 736:9-738:12, 3178:6-11). Ballistics analysis showed that the gun Petitioner possessed was the weapon used to kill Platia. (Id. 851:5-13). As for his narcotics trafficking, Petitioner pleaded guilty to conspiring to distribute marijuana (id. 1192:18-1194:11) and ecstasy (id. 2487:22-2490:13). In light of this powerful evidence of guilt, the court finds that there is not a reasonable likelihood that Lino's alleged perjury on a collateral issue would have affected the outcome of Petitioner's trial.

Accordingly, Petitioner's Napue claim is procedurally barred.

### 3. Ineffective Assistance of Counsel Claim

To the extent that Ground Three advances a claim of ineffective assistance of counsel, that claim is not procedurally barred. See Yick Man Mui, 614 F.3d at 54 (holding that the procedural bar rule does not apply to ineffective assistance of counsel claims). The claim is nonetheless denied because, as articulated above, Petitioner cannot show that he was prejudiced by trial counsel's alleged ineffectiveness. See Strickland v. Washington, 466 U.S. 668, 687 (1984) (holding that to succeed on an ineffective assistance of counsel claim, a petitioner must show that "counsel's performance was deficient" and "the deficient performance prejudiced the defense").

**B. Ground Four**

In Ground Four, Petitioner alleges that his trial counsel, Harry C. Batchelder, rendered ineffective assistance of counsel pre-trial and at trial because Batchelder "gave him false information concerning the availability of additional funds under the Criminal Justice Act [("CJA")] to secure an expert witness." (Am. Pet. at 18.) Petitioner asserts that Batchelder lied

to him when he said there were no funds available to retain an additional expert witness because Batchelder could have applied to the court for additional funds.[11] (Id. at 18-19.) According to Petitioner, "[t]his falsehood, and the failure to seek additional funds, unconstitutionally prejudiced the Petitioner at trial in that, but for trial counsel's unprofessional conduct, the outcome of the trial would have been different." (Id. at 18.)

1. Section 2255(f)(4)

Section 2255 petitions are subject to a one-year statute of limitations that runs, most generously to Petitioner, from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

Petitioner argues that Ground Four is timely pursuant to Section 2255(f)(4). (Am. Pet. at 18-19.) He asserts that he "only became aware of the fact that he had been lied to about the availability of funds for retention of an expert witness and the legal significance of that fact after" learning of the Supreme Court's decision in Hinton v. Alabama, 134 S. Ct. 1081 (2014). (Am. Pet. at 18.) In a "straightforward application" of Strickland, 466 U.S. 668, and its progeny, the Supreme Court held in Hinton that trial counsel's performance was deficient where counsel "fail[ed] to seek additional funds to hire an expert" and "that failure was based not on any strategic choice but on a mistaken belief that available funding was capped at $1,000." 134. S. Ct. at 1087-88.[12] LoCurto alleges that "[u]pon learning of the decision in Hinton," he "thereafter exercised due diligence and discovered that additional funds for expert witness services were

---

[11] 18 U.S.C. § 3006A(e)(3) provides that compensation for investigative, expert or other services "shall not exceed $2,400, . . . unless payment in excess of that limit is certified by the court, . . . as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit."

[12] The Supreme Court remanded the case for "reconsideration of whether Hinton's attorney's deficient performance was prejudicial under Strickland." 134 S. Ct. at 1090.

12

indeed available to him and that trial counsel had lied to him concerning the availability of such funds." (Pet'r Am. Pet. Mem. at 10.) He maintains that "[s]uch circumstances are sufficient to invoke the statutory 're-set' provisions under 28 U.S.C. 2255(f)(4)." (Id. (internal citation omitted).)

The Government counters that Ground Four is untimely under Section 2255(f)(4). (Gov't Am. Pet. Opp'n at 13.) The Government argues that "Hinton does not provide LoCurto a legitimate basis for a delay in filing as the facts to support his alleged ineffective assistance of counsel claim were discoverable with an exercise of due diligence long before Hinton . . . ." (Gov't Opp'n to Mot. for Disc. (Dkt. 105) at 4.) According to the Government, Petitioner "has known which witnesses testified since the time of his trial in 2006, and has not demonstrated any investigation in this counsel's alleged failing for a period of approximately eight years."[13] (Gov't Am. Pet. Opp'n at 14.)

The court agrees with the Government's position and finds that Ground Four is untimely. Under § 2255(f)(4), "'[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (citing Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) (analyzing the time limitation in 28 U.S.C. § 2244(d)(1)(D), which mirrors the limitation in § 2255(f)(4))); see also Matera v. United States, 83 F. Supp. 3d 536, 547 (S.D.N.Y. 2015). The Supreme Court's decision in Hinton did not bring to light any of the facts relevant to Petitioner's claim; accordingly, time does not begin from the date of the Hinton decision. Rather, the clock starts "when a duly diligent person in petitioner's circumstances" would have

---

[13] The Government further asserts that Hinton "did not form a new legal basis for relief" triggering the limitations period under 28 U.S.C. 2255(f)(3). (Gov't Opp'n at 14.) Petitioner does not appear to dispute this point. (Pet'r Mem. of Law in Further Supp. of Mot. for Disc. (Dkt. 108) at 40.) The court therefore does not address it.

13

discovered that his trial counsel misrepresented the availability of additional CJA funds. Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000).

Petitioner has known since 2006 which witnesses testified at trial. In fact, on direct appeal, Petitioner argued that Batchelder rendered ineffective assistance of counsel when he called Dr. Peter DeForest—a medical expert who had testified for the prosecution in Petitioner's state trial regarding the same murder alleged in the federal case—as a defense expert.[14] (See Br. of Appellant, United States v. LoCurto, Nos. 06-CR-5117, 07-CR-0712 (2d Cir. Nov. 1, 2007).) Furthermore, in its opinion in the direct appeal, the Second Circuit made statements that should have put Petitioner on notice at least of the possibility that Petitioner could have retained and called another medical expert: While addressing the facts that (1) the medical expert who had testified for Petitioner in Petitioner's state trial was no longer alive and that his testimony from the state trial was inadmissible hearsay, and (2) Petitioner had objected to Batchelder calling Dr. DeForest as a defense expert, the Second Circuit stated: "If the [testimony of the] medical expert [called by Petitioner in his state trial] was sound, surely another [i.e., a third] medical expert could have been procured . . . ." United States v. Amato, 306 F. App'x 630, 632 (2d Cir. 2009).

Petitioner has also known since even before his trial that Batchelder was using CJA funds to pay for the services of expert witnesses. (See Am. Pet. ¶ 12.) At trial, Batchelder told Petitioner that he could not retain another expert witness because they had expended all of the CJA funds available for expert services. (Id. ¶ 16.) While a reasonably diligent person in Petitioner's circumstances would not necessarily have looked into the issue immediately after trial, he or she would have considered that if trial counsel was not truthful about having difficulty in obtaining an expert opinion and then called Dr. DeForest as a witness after Petitioner objected,

---

[14] The Second Circuit rejected this claim. United States v. Amato, 306 F. App'x 630, 633 (2d Cir. 2009).

14

that trial counsel may have also lied about the availability of CJA funds. (Pet'r Mem. in Resp. to Suppl. Affirm. of Harry C. Batchelder, Jr. ("Pet'r Resp. to Suppl Affirm") (Dkt. 133) at 6.)

Section 2255(f)(4) requires that Petitioner exercise reasonable diligence. See Wims, 225 F.3d at 190 ("The statute does not require the maximum feasible diligence, only 'due,' or reasonable, diligence."). Petitioner has not demonstrated that he exercised reasonable diligence to ascertain the facts supporting the claim or claims.

2. Equitable Tolling

Having determined that Ground Four does not meet the requirements of Section 2255(f)(4), the court next turns to whether the period of limitation should be equitably tolled. "A 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003) (explaining that a petitioner must show that "the extraordinary circumstances caused his petition to be untimely").

As already discussed, however, it is neither the case that Petitioner has been pursuing his rights diligently nor that an extraordinary circumstance stood in his way and prevented timely filing. Thus, in the court's view, the period of limitation should not be equitably tolled.

## IV. CONCLUSION

For the foregoing reasons, Ground Three of the Petition (Dkts. 1, 62) is DISMISSED as procedurally barred and Ground Four of the Petition is DISMISSED as time-barred. The request for evidentiary hearings as to Ground Three and Ground Four are DENIED. The parties are DIRECTED to confer and contact the court's Deputy at 718-613-2545 to schedule a status conference to discuss scheduling the evidentiary hearing on Ground One of the Petition.

SO ORDERED.

Dated: Brooklyn, New York
February 28, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge