

SCHOOL OF LAW
FACULTY

**Seton Hall University**

One Newark Center, Newark, New Jersey 07102-5210
Main No. (973) 642-8800
Fax Nos. (973) 642-8194 / 8546
Internet: Http://law.shu.edu

July 3, 2023

Honorable Sanket J. Bulsara
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza Easr
Brooklyn, New York 11201

> **RE: LoCurto v. United States**
> **Civ. No. 10-cv-4589 (NGG) (SJB)**
> **Motion for Turnover of Documents held by the United States and identified in a privilege log filed as Docket Entry 111 in this case**

Dear Judge Bulsara:

    Please accept this letter as petitioner's motion for a turnover of documents held by the United States and identified in a privilege log filed as Docket Entry 111 in the above-referenced matter. The privilege log is attached to this motion. After a brief statement of facts and procedural history, the undersigned will apprise the court of the law governing this motion and the reasons why the documents identified in the privilege log should be turned over.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

    This is an action under 28 U.S.C. § 2255, wherein Petitioner Stephen LoCurto (hereinafter "Mr. LoCurto" or "LoCurto") seeks to vacate his conviction and sentence on the ground of ineffective assistance of counsel in violation of the 6th amendment of the U.S. Constitution, as interpreted by Lafler v. Cooper, 566 U.S. 156 (2012) and Hamilton v. United States, 592 F. Appx. 43, 44 (2nd Cir. 2015). Mr. LoCurto was convicted by a jury of various offenses, including racketeering homicide, in 2007. After his convictions were affirmed, see U.S. v. Amato, 306 Fed. Appx. 630 (2nd Cir. 2009), and certiorari denied, see U.S. v. LoCurto, 558 U.S. 940 (2009), Mr. LoCurto timely filed this action, asserting that, but for the ineffective assistance of trial counsel Harry Batchelder, Jr., he would have accepted an offer to plead guilty to the allegations in the indictment, in return for a recommendation of a 20 year prison term (DE 1, p. 5, para. 12(a)). Attached to the memorandum of law accompanying the original petition was a copy of a letter from Greg Andres, Esq., then an Assistant United States Attorney, to, inter alia, Harry Batchelder, Jr., Esq., offering to begin the process for recommending a sentence of 20 years for Mr. LoCurto, if he would agree to plead guilty to the allegations in the indictment. Instead, Mr. LoCurto went to trial, after receiving erroneous advice on his sentencing exposure from a lawyer working for Mr. Batchelder. He was convicted by a jury and received a life sentence (DE 1, p. 5, para. 12(b)).

1

On August 16, 2012, the Honorable Nicholas G. Garaufis, United States District Judge, referred the 2255 petition to the Honorable James Orenstein, United States Magistrate Judge, for a report and recommendation (hereinafter "R. & R."). (DE 18) Judge Orenstein bifurcated consideration of the questions presented by the petition and addressed himself to the threshold question of whether the advice Mr. LoCurto received, indicating that his sentencing exposure was no more than 20 years and that, should he get a life sentence, it would be "reversed on appeal," was objectively unreasonable and a violation of the first prong of the test for ineffectiveness established in Washington v. Strickland, 466 U.S. 668, 687-88 (1984), Lafler v. Cooper, 566 U.S. 156 (2012), and Hamilton v. United States, 592 Fed. Appx. 43, 44 (2nd Cir. 2015). Judge Orenstein determined that the advice Petitioner received was indeed objectively unreasonable and that an evidentiary hearing was therefore required to determine whether "the outcome of the plea process would have been different with competent advice." (R. & R., DE 72, p. 7, citing Lafler, 132 S.Ct. at 1384; Hamilton, 592 Fed. Appx. At 44.)

Prior to the R. & R., Petitioner filed a discovery motion, DE 34, seeking "…all notes, memoranda, records and other documentation regarding the plea agreement proposal offered to him by the U.S. Attorneys." In response to the § 2255 petition, the government had filed a memorandum, dated Feb 6, 2013, asserting that "no formal plea offer was ever extended" to LoCurto and that "…the Andres letter is the only evidence LoCurto has offered in support of the claim that he could have received a plea offer resulting in a twenty-year sentence." (DE 28, p. 27). This assertion turns out not to be true. In response to Petitioner's discovery motion and the court's order of November 21, 2016, the government identified 4 documents that are relevant and responsive to Petitioner's discovery request. The 4 identified documents are: 1): undated handwritten notes of AUSA Andres, written on the Urso indictment, concerning "plea status"; 2): A memorandum, authored by AUSA Andres, dated 9/12/05, entitled "proposed pleas in Urso case" and addressed to the Chief and Deputy Chief of the Organized Crime and Racketeering Section of the U.S. Attorney's Office; 3): an undated chart and notes, in AUSA Andres' handwriting, containing a "…[l]isting of 12 defendants, defendants' biographical information, charged racketeering acts and proposed plea offers"; and 4) a draft letter, dated August 29, 2005, "to defense counsel specifying proposed terms of incarceration for 12 defendants," with handwritten notes in Andres's handwriting. The government has asserted that these documents are all subject to a laundry list of privileges, including the attorney-client privilege, the work product privilege, and the deliberative process privilege. (DE 96) The court's November 21, 2016 order therefore required the government to create a privilege log for each document. Order of November 21, 2016. The government complied with the order and the documents identified were catalogued in a privilege log at Docket Entry 111.

After the privilege log was created, the undersigned sought permission to interview Mr. Andres. In an exchange of emails with the undersigned, Mr. Andres indicated that he could not remember anything about the plea negotiations in the case. The government has represented that Andres was shown copies of the documents in the privilege log and he still cannot remember what happened during plea negotiations in the case. According to the government, the documents were of no help in refreshing Mr. Andres' recollection. It is Petitioner's contention that a sufficient foundation can now be laid to establish that the documents in the privilege log are admissible as the past recollection recorded of the witness Andres under F.R.E. 803(5). That rule requires a showing that (1) the witness once had memory but now has insufficient present memory to testify "fully and accurately" about the acts, events or conditions described in the documents, Vicksburg & Meridian Railroad Co. v. O'Brien, 119 U.S. 99 (1886); (2) the

2

documents correctly reflect prior firsthand knowledge on the part of the witness, United States v. Patterson, 678 F. 2d 774, 779-780 (9th Cir. 1982); (3) the document was made or adopted by the witness, United States v. Lewis, 954 F. 2d 1386, 1394 (7th Cir 1992); (4) when the matter was fresh in his or her memory, United States v. Green, 258 F. 3d 683, 689 (7th Cir. 2001). The law in the Second Circuit is consonant with these principles. See Parker v. Reda, 327 F. 3d 211 (2nd Cir. 2003). Petitioner seeks the production of the documents so that he might use them to show that Andres and the government were prepared to offer Petitioner a 20-year sentence if he were to plead guilty. This would belie the government's assertion that it never offered Mr. LoCurto a "formal" offer. At a status conference on August 23, 2016, the government was pressed by the court to indicate whether it would have offered Mr. LoCurto a plea agreement stipulating a 20-year sentence in return for a plea of guilty on the indictment. Tanya Merkl, Esq., representing the government at the time, replied that, while she would not deny that Mr. LoCurto would have received a plea offer, it was his burden to prove that a plea offer would have been made. In a letter dated September 6, 2016 (DE 96), the government asserted that "it cannot and will not argue that the 'government would not have offered LoCurto the opportunity to enter into a plea agreement consistent with the terms described in the government's letter dated November 1, 2005 had plea negotiations commenced as it is *theoretically* possible that such a plea offer could have been drafted, approved by required supervisors and ultimately extended.'" (emphasis added). The documents identified in the privilege log will show that the likelihood of a 20-year plea offer was more than theoretical. The government's claim of privilege is thus disingenuous and nothing more than a scattershot effort seeking to prevent Petitioner from proving his case. It is clear that each of the claims of privilege invoked by the government can be overcome. Further, it is fundamentally unfair to deprive Petitioner of the opportunity to prove his entitlement to relief under Lafler, particularly because Mr. Andres has had a complete failure of memory as to the details of plea negotiations. The matters discussed in the documents will shed much light on those negotiations and assist Petitioner in meeting his burden to show prejudice. To demonstrate prejudice due to counsel's failure to engage in plea negotiations, a defendant must show that,

> "but for the ineffective advice of counsel[,] there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 566 U.S. 156, 164 (2012).

The documents withheld by the government will enable Petitioner to satisfy his burden under Lafler

### THERE HAS BEEN AN "AT-ISSUE" WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE IN THIS CASE

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. In re County of Erie, 473 F. 3d 413 (2nd Cir. 2007), citing U.S. v. Const. Prof. Research, Inc., 73 F3d 464, 473 (2nd Cir. 1996). The In re County of Erie decision points out that the privilege

3

may be waived under certain circumstances. Id. at 422. New York courts recognize a privilege waiver if a party asserts claims or defenses that place "at issue" the substance of communications that would otherwise be subject to a valid claim of privilege. Prink v. Rockefeller Center, Inc., 48 N.Y. 2d 309, 315-18, 422 N.Y.S. 2d 911, 914-17 (1979); People v. Edney, 39 N.Y. 2d 620, 624-26, 385 N.Y.S. 2d 23, 25-27 (1976). The government asserted that Mr. LoCurto has "no evidence" that would support his claim that the U.S. Attorney would have offered him a 20-year sentence. The documents identified in the privilege log will show that Andres intended to make the 20-year offer to LoCurto. Because of Andres's failure of memory, his notes and memoranda become crucial in establishing his intentions. The documents are firm and unequivocal evidence of what Mr. Andres' intentions were in the plea-bargaining process. The government's claim is therefore of such a nature that an assessment of its merits requires an examination of the substance of the privileged communication. Jakobleff v. Cerrato, Sweeney & Cohn, 97 A.D. 2d 834, 835, 468 N.Y.S. 2d 895, 897 (2nd Dept, 1983); Bowne of New York City v. Ambase Corp., 150 F.R.D. 465, 468 (S.D.N.Y. 1995); In re von Bulow, 828 F. 2d 94 at 102 (2nd Cir. 1987). An "at-issue" waiver of the attorney-client privilege may be found "where invasion of the privilege is required to determine the validity of the client's claim or defense and application of the privilege would deprive the adversary of vital information." Jakobleff, 97 A.D. 2d at 835 (citing Connell v. Bernstein-MacCaulay, Inc., 407 F. Supp. 420, 422-23 (S.D.N.Y. 1976); Hearn v. Rhay, 68 F.R.D. 574, 580 (D. Wash. 1975)). See also Jones v. Gelles, 167 A.D. 2d 636, 639, 562 N.Y. S. 2d 992, 995 (3rd Dept. 1990); Leucadia v. Reliance Ins. Co., 101 F.R.D. 674, 679-680 (S.D.N.Y. 1983). The only way to avoid disclosure of the documents is if the government now concedes that it would have made Mr. LoCurto the plea offer specified in the November 1, 2005 Andres letter. It has not made that concession, asserting only that a plea offer was "theoretically" possible.

## PETITIONER HAS DEMONSTRATED A SUBSTANTIAL NEED FOR THE MATERIALS IN THE GOVERNMENT'S HANDS, SUFFICIENT TO OVERCOME THE WORK PRODUCT PRIVILEGE

Petitioner agrees that the work product privilege likely also applies to the documents identified in the privilege log. He asserts that he has demonstrated a substantial need for the materials that readily overcomes the assertion of privilege and that he cannot get the information from any other source without "undue hardship." In fact, the information is simply not available from any other source other than the government's files. Mr. Andres there recorded what his intentions were in the plea bargaining process in the LoCurto case.

As the court in Gucci America, Inc. v. Guess?, Inc., 271 F.R.D. 58 (S.D.N.Y. 2012), in defining a "substantial need" in the work product context, pointed out:

> "A substantial need exists 'where the information sought is "essential" to the party's defense, is "crucial" to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.' Nat'l Congress for Puerto Rican Rights v. City of New York, 194 F.R.D. 105, 110 (S.D.N.Y. 2000) (substantial need demonstrated where data

4

compiled by defendants was 'directly probative on many of the issues in the case' and same information could not be obtained absent undue hardship). *See Weber v. Paduano*, No. 2 Civ. 3392 (GEL), 2003 WL 161340 at *14 (S.D.N.Y. Jan. 22, 2003) (substantial need for reports prepared by insurance company shortly after fire where 'plaintiff had no means of obtaining' substantially equivalent information)."

All three grounds identified in the Nat'l Congress fpr Puerto Rican Rights opinion exist in this case. The information sought in the documents is "essential" to Mr. LoCurto's claim under Lafler; it is also "crucial" to establishing that the government would have offered him a 20-year plea deal. Further, there can be no doubt that the information "carries great probative weight" on the contested issue of the government's intentions. For all of these reasons, the court should find that Petitioner has succeeded in overcoming the government's claim of work product privilege protection.

## FOR THE SAME REASONS, THE CLAIM OF DELIBERATIVE PROCESS PRIVILEGE MUST ALSO FAIL

Petitioner relies on the same grounds in support of his position that the claim of the existence of a deliberative process privilege has either been overcome or waived. An "at issue" waiver is similarly applicable to assertions of the deliberative process privilege. In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation, 898 F. Supp 603, 607 (S.D.N.Y. 2012). The court there said: "…when a party puts its confidential communications directly at issue in litigation, any privilege—qualified or not—may be waived." Id. Other courts have noted that "…if the party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation, then the deliberative process privilege 'evaporates.'" National Rifle Association v. Cuomo, 332 F.R.D. 420, 434 (N.D.N.Y. 2019)(quoting Children First Found., Inc. v. Martinez, 2007 WL 4344915 at *7 (N.D.N.Y., Dec. 16, 2007) and citing In re Subpoena Duces Tecum Served on the Office of the Comptroller, 145 F. 3d 1422, 1424 (D.C. Cir. 1998). "[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). That is exactly what happened here, as almost all of the defendants in the Urso matter received plea offers and sentences recommended by Andres or, in some cases, even more lenient sentences. A turnover of the documents will assist Mr. LoCurto in showing that he also would have received the plea offer recommended by Andres. As Judge Learned Hand said in United States v. Andolschek, 142 F.2d 503, 506 (2nd Cir 1944), documents should not be suppressed in a criminal prosecution, which is "…founded upon those very dealings to which the documents relate…." Such is the case in this matter.

Respectfully Submitted,

Bernard K. Freamon, Esq.
Attorney for Stephen LoCurto

5



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 5, 2016

By ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    LoCurto v. United States
                Civil Docket No. 10-4589 (NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter in accordance with the Court's order of November 21, 2016, directing the government to provide a privilege log that identifies the specific documents that the government asserts are protected by privilege in connection with petitioner Stephen LoCurto's request for discovery regarding his claim of ineffective assistance of counsel in plea negotiations under Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012) and Missouri v. Frye, ___ U.S. ___, 132 S. Ct. 1399, 1410 (2012) (referred to as "Ground One" of LoCurto's § 2255 petition).

      As first detailed in the government's letter of August 6, 2013, the government has undertaken an exhaustive search, starting in the summer of 2013, for documents relevant to Ground One of LoCurto's § 2255 petition. See Docket Entry No. 48. The government updated the Court as to the results of that search in a letter filed on November 4, 2016. See Docket Entry No. 105. As noted in the prior letters, the government's search to date has yielded a very small number of pertinent documents. In addition, as noted, the government determined that no electronic communications were available due to the passage of time between LoCurto's criminal case and the filing of his § 2255 application.

      On November 21, the Court ordered the government to file a privilege log detailing "(i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other." Order, 11/21/16. As noted, the government has located very few documents, as follows:

| Type of Document | General Subject Matter | Date of Document | Author/Addresses & Relationship Between Them |
|---|---|---|---|
| Handwritten Notes on a Copy of the caption of the Urso Indictment (Docket No. 03-CR-1382) | Plea status | Undated | Handwritten Notes of AUSA Andres |
| Memorandum | Proposed Pleas for the Urso case | 9/12/2005 | Authored by AUSA Andres, then Deputy Chief of the Organized Crime & Racketeering Section ("OCRS"); Addressed to Mark Feldman, Chief of OCRS & Thomas Siegel, Deputy Chief of OCRS |
| Chart & Handwritten Notes | Listing of 12 defendants, defendants' biographical information, charged racketeering acts and proposed plea offers | Undated | Handwritten Notes of AUSA Andres |
| Draft Letter with Handwritten Notes | Draft letter to defense counsel specifying proposed terms of incarceration for 12 defendants, with handwritten notes | Draft letter dated August 29, 2005; notes undated | AUSA Andres; Handwritten Notes of AUSA Andres |

As set forth in the government's letter of November 4, these documents are protected by various privileges, including the work product privilege, as the documents were clearly prepared during litigation and contain mental impressions and conclusions of AUSA Andres. The memorandum likewise contains mental impressions and conclusions, and is also protected as an attorney-client communication as it reflects the assigned AUSA's analysis and recommendations to the Chief of OCRS with regard to possible plea offers. The memorandum was and has always been kept confidential and appears to have been communicated to a supervisor in connection with determining a course of action in the litigation. Finally, the memorandum, the draft letter and the various handwritten notes are also protected by the deliberative process privilege as they were clearly made in the course of AUSA Andres's deliberations on the appropriate plea offers in this case. Indeed, given the very nature of the documents at issue — internal notes of an attorney regarding the case and

a memorandum regarding proposed plea offers — there is no question that the documents were prepared to assist the government's decisionmaking.

As detailed more fully in the government's November 4 letter, the defendant is not entitled to discovery that invades the government's multiple applicable privileges. Accordingly, no further discovery on Ground One of his § 2255 petition is warranted.[1]

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:   /s/ Taryn A. Merkl
Taryn A. Merkl
Assistant U.S. Attorney
(718) 254-6064

---

[1] The government notes its continuing objection to the provision of any discovery on Ground One as LoCurto has not made a showing of good cause for discovery as required in a § 2255 proceeding. For the reasons set forth in the government's response to the petitioner's § 2255 petition (Docket Entry No. 28), the government's response to LoCurto's request for discovery (Docket Entry. No. 38), the government's motion for reconsideration of Magistrate Judge Orenstein's initial decision about discovery in this case (Docket Entry No. 43), and in the government's objections to Judge Orenstein's Report & Recommendation (Docket Entry No. 74), the defendant cannot establish the necessary facts for relief on his Frye/Lafler claim. Moreover, as discussed in the government's motion for reconsideration, LoCurto is not entitled to relief on the basis of ineffective assistance predicated on advice given by an attorney who was not petitioner's attorney of record, particularly when his assigned attorney of record provided the correct legal advice. See Docket Entry No. 43 at pp. 5-7.

3